Woodville et al *v.* Pizzati.

[81 South. 127, Division B.]

1. WILLS. *Undue influence. Jury question.*

The question of undue influence is an issue of fact, solely for the jury.

2. WILLS. *Contest. Real estate. Laws applicable.*

In devises of realty, the *lex. loci rei sitae* controls as to the formalities of execution, testamentary capacity of the testator, and the construction of the instrument, irrespective of the domicile of the testator, or the date or place of the execution of the will.

3. SAME.

Real estate, is governed, in its transmission and descent, by the laws of the country in which it is situated.

4. WILLS. *Probate. Nature of proceeding. Proceeding in rem.*

The probate of a will is primarily and essentially a proceeding *in rem* and has no direct effect upon property outside of the jurisdiction in which the will is probated.

5. WILLS. *Testamentary power. Nature of.*
   The right of a testator to devolve property by last will and testa-
   ment and the right of any devisee thereunder are statutory
   rights.

6. WILLS. *Testamentary capacity. Statutory requirements.*
   The state has the right to prescribe the competency of persons
   to make a will and to deal by statute with the whole subject
   of wills, as well as to enact its own law of descent and dis-
   tribution.

7. WILLS. *Will contest. Estoppel.*
   Where the widow acquiesced in the probate of the will of her
   deceased husband, but such probate did not involve the issue
   of undue influence, and the widow was induced by the son of
   the sole legatee under the will, who was an attorney, to believe
   that real estate in Mississippi would not be affected by a will.
   In such case, the widow was not estopped from contesting the
   will in Mississippi, on the ground of undue influence, in so far
   as the land in this state was concerned.

8. WILLS. *Right to contest.*
   A widow who is the sole heir of her deceased husband has the
   right to contest his will.

9. WILLS. *Foreign probate. Conclusiveness.*
   Under Code 1906, section 2004 (Hemingway's Code, section 1669),
   the judgment of a Louisiana court, establishing an instrument
   as a will was not conclusive on the courts of Mississippi, under
   the full faith and credit clause of Const. U. S., art. 4, section
   1, in so far as it affected real estate in this state, since the rights
   of parties to real estate in Mississippi can be adjudicated only
   in Mississippi courts, it being a purely local question.

10. JUDGMENTS. *Conclusiveness. Foreign judgments. Jurisdiction.*
    Under the broad principles of comity, our courts will give full
    force and effect to the judgments of the courts of other states;
    but in all such cases, the jurisdiction of the court of first in-
    stance must affirmatively appear.   Certainly they must have
    jurisdiction of the parties and of the subject-matter.

11. WILLS. *Undue influence. Fraud.*
    While under the statute of Louisiana, no issue of fraud or undue
    influence can be raised in a contested will case in that state,
    yet in Mississippi, it can be raised, and a will which is the
    product of fraud and undue influence is in the eye of our laws,
    no will at all.

12. WILLS. *Undue influence. Nature.*
In order to destroy a will on the ground of undue influence, the conduct complained of must be of such character as to destroy the testator's free agency.

13. WILLS. *Undue influence. Evidence.*
The right to contest a will upon the ground of undue influence is a right recognized, defined, and measured by the substantive law on the subject. The evidence upon this issue is frequently circumstantial and a wide range of inquiry is permitted.

APPEAL from the chancery court of Harrison county.
HON. W. M. DENNY, JR., Chancellor.

Suit by Mrs. Francisco Pizzati against Robert Woodville and others. From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*J. L. Taylor* and *H. Chalmers Alexander,* for appellants.

It would appear from counsel's brief for appellee that he recognized the contention of appellants with regard to the full faith and credit clause of the Constitution and the matter of estoppel, but claims that because of the agreement entered into among the parties, namely Mrs. Pizzati, Marco Pizzati, and Robert Woodville, which was afterwards declared null by the Supreme court of Louisiana that it was a fraud upon Mrs. Pizzati, so that she is not estopped by reason of her conduct and actions in the court of Louisiana, and that jurisdiction was obtained there because of said fraudulent agreement.

We call the court's attention to section 1998 of the Code of 1906, which is as follows: "In any proceeding to contest the validity of a will, all persons interested in such contest shall be made parties." Now, the contestant did not make Marco Pizzati, who, on the face of this will is an interested party a party to the suit, which shows by her pleading that she recognized the validity of the decree of the supreme court *adjudging*

Marco Pizzati not to have been a legally adopted son, and who because he refused to collate the twenty thousand dollars, was denied any legacy.

Counsel cites the *McCormick case,* U. S. Law Ed. Vol. 6, page 300, in support of his theory of the matter, but a reading of that case will disclose that an authenticated copy of the will was not probated in Ohio, according to a similar statute of our state, but it was sought to give the will as probated in Pennsylvania extra territorial powers, and, of course, that cannot be done. And, in the *Blount case,* U. S. Law Ed., Vol. 33, page 1036, cited by counsel, the same matter arose and the court said: "But the state court, conceded that the judgment of the probate court of North Carolina established that the will of Mrs. Blount was her last will and testament duly executed, and its decision did not in the slightest degree proceed upon the denial of that fact but gave the judgment the same force and effect it had in North Carolina, for in neither of the states would the will, as such, dispose of property that did not belong to the testatrix."

In the *Robinson case,* U. S. Law Ed. 27, page 1049, there was no contest of the probate of the will, but by the lapse of seven years it became conclusive under the laws of Virginia, but no probate of an authenticated copy was even offered in the District of Columbia, and that is what that case decided.

In all the cases we have found that the full faith and credit clause did not apply to such matters were instances where the proceedings were *ex parte* and thereby in the nature of proceedings *in rem,* but in every case where there was litigation and the parties all in court, we find that the judgment in such that the full faith and credit clause of the Constitution is applicable.

Opposing counsel in discussing the subject of estoppel make reference to 2 Alexander on Wills, section 827, page 1199, to the effect that a litigation made in ignorance of facts will not estop, but the next ensuing section of this text book, section 828, distinctly sets forth

in substance that election by estoppel may arise where
the party having the right of election and acting with
knowledge of his rights and not because of ignorance
or fraud or mistake, deals with the property as his
own and exercises acts of ownership.    This section,
cited by opposing counsel on page 1200, distinctly re-
cited that: ''Under the conditions just mentioned,
election by estoppel will arise by a widow joining in a
conveyance by the executor with no stipulation in re-
gard to dower.'' And this same text book, on which
counsel for appellee relies, further and at another place,
states as follows:

''Section 1328, where one entitled to contest a will
enters a personal appearance in the matter prior to the
admission of the will to probate and expressly consents
to its admission, in the absence of fraud the decree of
the probate court accepting the will is conclusive against
such party, and he cannot thereafter contest the validity
of the instrument or of the decree admitting it.    In
such a case the court has jurisdiction of both the sub-
ject-matter and the parties. 3' Alexander on Wills,
page 2041; *Champlain* v. *Jackson et al.,* 34 Col. Rep. 447;
*Benoit Julienne Caujolle, et al.* v. *Cyrus Curtiss,* 20 Law
Ed. 507.

We think that opposing counsel have not answered our
argument that under the full faith and credit clause of
the Constitution our Mississippi court accepted the
action of the Louisiana court as final in this cause.

In conclusion, we again reiterate the assertion set
forth in the brief on file for appellants that the actions
and acquiescence and the acceptance by Mrs. Pizzati and
her proceedings in court, preclude procedure by her in
Mississippi to contest the will under which she has
profited, and we cite the following decision of the U. S.
supreme court in further support of our contention, to-
wit: *Drexel* v. *Burney,* 122 U. S. 241, 253, 30 Law Ed.
1219, and which, as digested in volume 5 of the
Encyclopedia of the United States supreme court de-

citions, page 567, reads as follows: "56. Probate of Will. A citizen of the United States died in France, leaving in Europe and elsewhere large amounts of property. He named his widow, his brother, a resident of Alabama and a third person, a citizen of France, as executrix and executors. The executrix while domiciled in France became a party to certain notarial instruments and records in France which declared that the probate of her husband's will in Alabama was valid, and that he was domiciled in Alabama, and received legacies under such will. It was held that the executrix by her acts and conduct has estopped herself from disputing facts of such domicile, and from asserting any facts which annuls the executorship of her husband's brother under the Alabama probate.

We accordingly submit that the decree of the court below was erroneous and should be reversed, and proper decree be now entered in this appellate court in favor of the appellants.

Counsel cite the code as to contruction and effect of wills, and we beg to say that that question is not now before this court on this issue, the sole question here being, whether or not this is the last will and testament, and not the effect of it.

*Mize & Mize,* for appellees.

First Ground Estoppel. As a general rule, if there is anything well settled, it is that where one accepts gifts or benefits under a will as a legatee, this will estops contest of the will by such person. Thompson on Wills and Testamentary Forms, sec. 519 reads as follows: "A person may estop himself from contesting a will by transfer, release, agreement or extinction of his heirship, and such estoppel, though equitable, may be pleaded as a defense in the probate court. Thus, an agreement by legatee to pay money to an heir at law of the testator for forbearance of his right

to contest the will rests upon a valuable consideration and is valid. When one has accepted the benefits of a will with full knowledge of the facts on which his right is based, he is thereby estopped from asserting the invalidity of the instrument, especially if there has been a lapse of time, witnesses have died, etc. But there can be no estoppel as against a plaintiff unless it be shown that the defendant has incurred some liability, or has been induced to do something to his prejudice, in consequence of plaintiff's conduct."

In short, Thompson on Wills, sec. 519, and authorities on which the text is based, state the weight of authority on the question of estoppel, as to who is estopped and who is not. 2 Alexander on Wills, sec. 827, p. 1199; 2 Alexander on Wills, sec. 828, p. 1200.

Mrs. Pizatti could not have contested the will on the ground of undue influence in the Louisiana courts, and would not have contested it anywhere had Mr. Woodville lived up to his agreement to let her have the Mississippi property as her homestead, the only one she had.

Under title two of "donations *inter vivos* (between living persons) and *mortis causa* (in prospect of death)" are to be found in the Louisiana civil Code, the following articles of which provide:

"Art. 1490. Donations *inter vivos* and *mortis causa* may be made in favor of á stranger when the laws of his country do not prohibit similar dispositions from being made in favor of citizens of this state."

"Art. 1491. Every disposition in favor of a person incapable of receiving, shall be null, whether it be disguised under the form of an onerous contract, or be made under the name of persons interposed. The father, mother, the children and descendants of the husband or wife of the incapable person, shall be reputed persons interposed."

"Art. 1492. Proof is not admitted of the dispositions having been made through hatred, anger, suggestion or captation."

The supreme court of Louisiana, in the case of *Succession of McDermott,* 136 La. 80, 66 So. 546, said: "An action to annul wills on the ground of fraudulent 'undue influence' or 'captation' is repelled by the plain text of article 1492 of the Civil Code."

Again, in the *Succession of Hernandez,* 137 La. 134, 70 So. 63, the supreme court of Louisiana said: "An action to annul a will on the ground of fraudulent suggestions or undue influence or captation is repelled by the plain text of article 1492 of the Civil Code." Thus showing that under these very late decisions of the supreme court of Louisiana, Mrs. Pizzati could not have brought suit in the state of Louisiana to contest the will on the ground of undue influence.

We submit, from the foregoing, that the court was correct in denying the estoppel.

Appellants' second contention, is that to permit this contest of the will in the state of Mississippi would be to deny the full faith and credit clause of the Constitution of the United States, in that it would not be giving full faith and credit to the judgment of the supreme court of Louisiana establishing the instrument in question as the last will and testament of Captain Pizzati.

The question that lies at the very threshold of every case where the full faith and credit clause is in controversy is, did the court that rendered the judgment have jurisdiction? The question of jurisdiction of the court rendering the judgment can be inquired into in any state in the union where such judgment is sought to be enforced. Digest, United States Supreme Court Reports, Law Edition, Vol. 4, p. 3700, under. title, Inquiry into Jurisdiction, sec. 2004, Code of Mississippi of 1906. According to this section appellants had an authenticated copy of the will in question admitted to

probate in the chancery court of Harrison county. Under this section, appellee had the right to contest the will.

The cases cited by appellants are cases where there is no question but what the court rendering the judgment had jurisdiction both of the person and subject-matter; it can administer the law as the law of that state warrants as to the person and subject-matter; and when the court does this and renders a valid judgment thereon, every state in the union must respect it, but it was beyond the power of the courts of Louisiana to render any valid judgment with reference to real estate situated in Mississippi.

Perhaps the question of probate of wills has furnished about as much law on this subject as any other line of litigation but counsel for appellants have steered clear of decisions adjudicating cases on the subject of wills. *McCormick et ux. et al.* v. *Sullivant et al.,* 6 U. S. Supt. Ct. Rep., (Law Ed.) 300; *Blount* v. *Walker,* U. S. Law Ed. Vol. 33, 1036; *Robinson et al.* v. *Pickerel etal.,* 7 Law Ed. (U. S. Sup. Ct. Rep.), 1049; *Dardy's Lessee* v. *Mayer et al.,* 6 Law Ed. (U. S. Supt. Ct. Rep.) 367; *Kern* v. *Moon,* 6 Law Ed. (U. S. Supt. Ct.), 161; *U. S.* v. *Crosby,* 3d Law Ed. (U. S. Supt. Ct.), 287, and *Clark* v. *Clark,* 44 Ed. 1028, U. S. Sup. Ct. Rep; *Crusoe* v. *Butler* 36 Miss. 167.

The third and last groud of appellant's contention is that the evidence is not sufficient to warrant the jury in finding that undue influence was exercised over Capt. Pizzati by J. A. Woodville in favor of himself and his father so that, at the time he executed this will, he was not a free agent.

The law as to undue influence is so well settled as to need no citation. Schouler on Wills, etc., 265, sec. 277. "Undue influence is defined as that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist;" and, Schouler on Wills, sec. 229,

p. 269, says: "To invalidate, therefore, a will on the ground of fraud, compulsion or undue influence, such conduct must be of such character as to destroy the testator's free agency, and substitute for his own another person's will," and then goes on to discuss it. In short, undue influence is such, when exerted upon a testator by another, that the testator's mind becomes not a free agent; in other words, not his own mind, but that of another. The instructions in the instant case were taken from, *England* v. *Fairbrush*, 204 Ill. 384, 68 N. E. 526; Schouler on Wills, sec. 225, p. 264; sec. 242, p. 290.

We could cite many cases in point, but each case has to depend on its own peculiar facts; and we therefore content ourselves with citing two Mississippi cases, which are no more than the general law on the subject found in the text books, to wit: *Jameson* v. *Jameson*, 96 Miss., 288; *Hitt* v. *Terry*, 92 Miss. 671; *Meier* v. *Buchter*, 197 Mo. 68, 6 L. R. A. (N. S.) 202.

Section 5086 of the code of Mississippi of 1906, provides that when a husband makes a will and does not make satisfactory provision for his wife therein, she may at any time within six months after the probate of the will renounce it and she will then be entitled to such part of the estate; and if the husband leaves no child nor descendants of such, the widow upon renouncing is entitled to one-half of the real and personal estate.

Section 5087 provides that if the will of the wife or husband shall not make any provision for the other, the survivor of them shall have the right to share in the estate of the deceased husband or wife as in the case of unsatisfactory provision by the will of husband or wife for the other of them; in which case renouncement shall not be necessary, and the survivor takes as if the will contained unsatisfactory provision and it was renounced.

Now, in this case it is beyond denial, nor is it denied that Capt. Pizzati in his will made no provision for his wife, and the case falls squarely within section 4087 above cited, and under said section she does not have to renounce the will, but her rights are secured to her by section 5087 and are just the same as provided by section 5086 wherein a testator makes unsatisfactory provision for his wife and she has to renounce. Appellants set up by their answer that the, property that appellee got by the law of Louisiana at Capt. Pizzati's death was such as is contemplated by section 5089 of the Code of Mississippi and that sec. 5087 does not apply. We submit that this is not the kind of property contemplated by section 5089; it means a separate estate in her own name at the time of the death of her husband. The very title of the section indicates this: ''Where a wife or husband has a separate estate.'' Such property as she secures at the death of her husband from his estate is not a separate estate under this section; it means a separate estate she had at the time of his death.

The case of *Osborne* v. *Sims*, 62 Miss., is not in point for the reason that in that case the separate estate was a life insurance policy taken out for the wife by the husband in his lifetime, in which she had an estate of some value the very moment the policy was delivered; had the husband died without any estate whatever, his wife would have had the value of this life insurance policy at his death as her estate alone. Therefore, it comes within the section. Such is not the case here.

Therefore, should the court for any reason hold this will valid, yet, from the foregoing, appellee is entitled to a decree for one-half of the Mississippi property; but we most earnestly submit that unquestionably, from the record in this case and the authorities herein cited, this court should affirm the finding of the jury that un-

due influence was exerted on the testator in the making of this will to the extent that it is not a valid will, and the decree should be affirmed.

STEVENS, J., delivered the opinion of the court.

This suit presents a contest over the alleged last will and testament of Salvatore Pizzati, deceased. Salvatore Pizzati died in the city of New Orleans December 30, 1915, at the age of seventy-six years, leaving a document bearing date December 7, 1915, purporting to be his last will, devising all of the testator's disposable property to Robert Woodville of Utilla, Spanish Honduras, and naming John Alonzo Woodville his executor. Pizzati left a wife, but no children. The present contest was instituted by Mrs. Francesca Vallenzano Pizzati, by a bill in equity filed in the chancery court of Harrison county, Miss., where the will had been probated upon an authenticated copy of the will and the proceedings in reference to the probate of the original in the civil district court of the parish of Orleans, State of Louisiana. It appears that deceased executed several wills, all of which are copied in full in the opinion of the supreme court of Louisiana in *Succession of Pizzati*, 75 So. 498, disposing of certain oppositions to the final account of the testamentary executor. The original was probated in Louisiana without objection from Mrs. Pizzati or any one else, and under the law of Louisiana Mrs. Pizzati, appellee herein, took one-half of all property of deceased situated in Louisiana. The bill filed by the widow was answered and an issue *devisavit vel non* was made up, a jury drawn and impaneled, and the said issue tried, resulting in a verdict of the jury in favor of the widow to the effect that the document presented was the result of undue influence and was not the true last will of Capt. Pizzati.

The occasion for probating the will in Harrison county is due to the fact that the deceased owned a house

and lot in Biloxi, Miss. The petition for the probate of the original in the district court of Orleans parish was signed by appellee, Mrs. Pizzati, as well as J. A. Woodville, and recited that Salvatore Pizzati died testate. It is stated in one of the briefs of counsel for appellant that the will was contested in Louisiana, that the courts of Louisiana have established the document as the true last will of the deceased, and that the adjudication in Louisiana binds and estops the widow from contesting the will in Mississippi. The bill in the present proceeding was first met by a plea of estoppel based on the full faith and credit clause of the United States Constitution, article 4, section 1. This plea of estoppel was set down for hearing as insufficient and decree rendered by the learned chancellor sustaining the exceptions to the plea as insufficient in law.

The first assignment on this appeal challenges the correctness of the court's action in holding the plea of estoppel insufficient. It is next contended on appeal that section 2004, Code of 1906 (section 1669, Hemingway's Code), if construed to authorize the contest of a will duly admitted to probate in the jurisdiction of the domicile of the testator, is in conflict with that section of the federal Constitution above mentioned. It is also contended that, aside from any constitutional question, Mrs. Pizzati, by her action in signing the petition for the probate of the will in Louisiana and by accepting alleged benefits thereunder, is now estopped upon general principles of equity applicable to estoppel generally. The record before us discloses that Capt. Pizzati and his wife lived much of their time in Biloxi, Miss., occupying there the property now in controversy and valued at approximately ten thousand dollars. John Alonzo Woodville is a son of Robert Woodville, the universal legatee, and was also the attorney of Capt. Pizzati. The will devises nothing to the widow, but does refer to M. A. Pizzati as the adopted son of the

testator, and the principal contest presented to the
Louisiana court was in reference to the legality of the
adoption proceedings and that provision of the will
requiring M. A. Pizzati to collate twenty thousand
dollars.    There was a written agreement entered into
by the adopted son, the surviving widow, and the uni-
versal legatee, which agreement is copied in full in the ·
. opinion of the supreme court of Louisiana on page 504
of 75 So.    The conclusion was reached by the Supreme
court of Louisiana that M. A. Pizzati was not the
legally adopted son; that there were no forced heirs;
that the deceased was capable of disposing of his entire
estate; that the contract or agreement just mentioned
purporting to divide the estate in certain porportions
was entered into under a mistake; and that the agree-
ment that M. A. Pizzati would not be called upon to
collate the twenty thousand dollars as mentioned in the
will could not be enforced.

Without referring in more detail to the issues pre-
sented to the supreme court of Louisiana, it is suffi-
cient to say that in the several oppositions to the final
account of the executor no issue was presented that
the will was the product of undue influence.    The
widow was not named as a devisee and took nothing as
a devisee, but only in her capacity as a surviving widow
and by virtue of the laws of Louisiana.    In the bill
here filed, however, she avers that the last will of
December, 1915, was procured through the undue in-
fluence of the Woodvilles, and upon the trial of the case
much testimony tending to prove undue influence was
introduced.    It may be pertinent to the issue now pre-
sented to refer to certain testimony which appellee con-
tends relieves her from any alleged estoppel.    It is in
evidence that, on the day following Pizzati's funeral, J.
A. Woodville called on the widow in the city of New
Orleans and requested a conference; that the next day
Mrs. Pizzati and her niece went to the law office of
Mr. Woodville, where the will was read and explained

by the executor, and in this conference representations were made that the will did not affect, and could not affect, Mrs. Pizzati's summer home in Biloxi; that this home had been provided for her; and upon a suggestion from Miss May Pazzati, the niece, that an attorney be consulted, Mr. Woodville replied that appellee did not ·need another attorney, that he could administer the property in the interest of all parties concerned. Ap-. pellee contends that these representations of J. A. Woodville led her to believe, and she did believe, that the Mississippi property would belong to her as sole heir at law, and that the probate of the will in Louisiana concerned the Louisiana property alone. There is a further contention by appellant that the proof is insufficient to make out a case of undue influence and that the verdict of the jury for this reason should be set aside.

The last point raised on this appeal will be disposed of first. The testimony on behalf of the contestant was sufficient to put the issue of undue influence to the jury and, if believed by the jury, makes out a case. This issue of fact is solely one for the jury to pass on, and their findings in this case should not be set aside. A general statement of our conclusion on this point is sufficient. No good purpose would be served by a detailed statement of the facts tending to prove undue influence. To narrate these facts would only operate as a permanent memorial of circumstances and incidents which are now perhaps unpleasant to all parties concerned.

Section 2004, Code of 1906, authorizes the admision to probate in our state of authenticated copies of wills, proven according to the laws of any of the states of the Union, or of the territories or of any foreign country. But, says the statute:

"Such will may be contested as the original might have been if it had been executed in this state, or the original will may be proven and admitted to record here."

This statute has always been a part of the statutory law of our commonwealth, appearing in Hutchinson's Code on page 651 in substantially the same language as our present statute. See article 49, p. 435, Code of 1857; section 1105, Rev. Code of 1871; paragraph 1976, Code of 1880; paragraph 1829, Code of 1892. Construing this section, our court, in *Heard* v. *Drennen,* 93 Miss, 236, 46 So. 243, said:

"The only effect of this section is to dispense with the necessity of original proof of foreign wills when presented for probate in this state, where the will has been duly proved according to any of the laws of any of the states or territories of the Union, or of the foreign country, where admitted to probate; but, while this is true, the statute does not give any conclusive effect to the foreign probate of a will, and is very careful to protect the right to contest it when presented here, as the original might have been if it had been executed in this state. In other words, the only effect of Code 1906, section 2004, is to dispense with formal proof of the due execution of the will where it has been proved according to the laws of any other state, etc., where an authenticated copy is produced showing that it has been proved in the state where it was made according to the laws of that state, etc. In so far as the will itself is concerned, it is treated in all respects as an original will, and all of the rights to be derived through the will must be derived from its terms administered according to the law of this state, so far as it affects property situated here."

The present contest involves real etate only. There is here no question as to any bequest of personal property or as to the true construction of the will. There is some dispute in the testimony as to whether Capt. Pizzati at the time of his death had his domicile in New Orleans or Biloxi. For the purposes of the present discussion it is unnecessary to reconcile the testimony on this point. Conceding that the deceased was a resident

of Louisiana, the right of the appellee to contest the
will so far as it affects the title of real estate situated in
Mississippi must be defined and enforced by and under
the Mississippi law.    In this case no constitutional
question is presented.    The English common law, from
which we derive our jurisprudence, fully recognized the
right of the jurisdiction in which immovable property is
situated to govern all rights in or to such property,
including the devolution of same.    In paragraph 271,
vol. 1, of Alexander's Commentaries on Wills, a new
and satisfactory treatment of the whole subject of wills,
it is said:

"As to devises of realty the *lex loci rei sitæ* controls
as to the formalties of execution, testamentary capacity
of the testator, and the construction of the instrument,
irrespective of the domicile of the testator or the date or
place of the execution of the will."

And in paragraph 281 it is said: "The probate of a
will in the state wherein the testator was domiciled at
the time of his death has no effect upon land situated
in another state, and for this reason statutes have been
enacted in various jurisdiction providing for the probate
of foreign wills, or the recording of duly authenticated
copies of the probate proceedings."

In Dicey on Conflict of Laws (2 Ed. 1908), it is stated:

"All rights over, or in relation to, an immovable
(land) are  .  .  .  governed by the law of the country
where the immovable is situate (*lex situs*)."

And the "comment" on this rule in quoting from the
Story and Westlake says:

"The general principle of the common law is, that the
laws of the place, where such (immovable) property is
situate, exclusively govern, in respect to the rights of
the parties, the modes of transfer, and the solemnities
which should accompany them.    The common law has
avoided all  .  .  .  difficulties by a simple and uniform
test.    It declares that the law of the situs shall exclusive-

ly govern in regard to all rights, interests, and titles, in and to immovable property.''

The common law announced a different rule as to personal property. Whether the common-law rule as to personalty has been changed or modified by our statute we need not either inquire or decide. In one of our earliest cases, *Garland* v. *Rowan,* 2 Smedes & M. 617, our court said:

''As to the real estate, there is no diversity of opinion; it is universally conceded that such estate is governed, in its transmission and descent, by the laws of the country in which it is situated.''

This doctrine has been reaffirmed without qualification in many subsequent decisions of our court. *Wells et al.* v. *Wells,* 35 Miss 638; *Crusoe* v. *Butler et ux.,* 36 Miss. 160; *Still* v. *Corporation of Woodville,* 38 Miss. 646; *Riley* v. *Mosley,* 44 Miss. 37; *Heard* v. *Drennen, supra.* It is stated in *Crusoe* v. *Butler et ux., supra:*

''The rule is well established that the conveyance of real estate must be made according to the law *rei sitæ,* which alone can prescribe the mode in which title to such property or any right or interest therein, may pass; and a will made and admitted to probate in a foreign state or one of the states of this confederacy is not sufficient to pass title to land in another state where it is situate, unless the will be admitted to probate in the latter jurisdiction according to its laws. *McCormick* v. *Sullivant,* 10 Wheat. (U. S.), 202, 6 L. Ed. 300; *United States* v. *Crosby,* 7 Cranch (U. S.) 115, 3 L. Ed. 287; *Kerr* v. *Moon,* 9 Wheat. (U. S.) 6 L. Ed. 161; *Carmichal* v. *Elmendorf,* 4 Bibb (Ky.) 484; *Cornelison* v. *Browning,* 10 B. Mon. (Ky.) 428. This rule is not affected by the provision of the act of Congress of 26th May, 1790, 'that the records and judicial proceedings of the courts of any state, shall be proved or admitted in any other court within the United States, by attestation, etc., . . . and that said records and judicial proceedings, authenticated as aforesaid, shall have such faith

and ·credit given to them, in every court within the United States, as they have by law or usage in the courts of the states from whence said records are or shall be taken.' Under this act the record of a judgment in one of the states is entitled only to such credit, validity, and effect in another state as it has in the state where it was rendered. But as a will disposing of real estate is only effectual for that purpose when made according to the law of the state where the land is situate, and its operation is entirely local, a probate in another state could give it no credit or validity there as to such land, and consequently under the provsions of the act of Congress, it could give it none in the state where the land lay. Accordingly, the cases are numerous where probates of this character have been held insufficient to establish the will in another state where the land was situate, so as to pass the title.''

An early case in point from one of our sister states is that of *Williams* v. *Saunders,* 5 Cold. (Tenn.). 70. The supreme court of Tennessee employed this language:

''But in regard to wills of immovable or real property, it appears to be equally well established that the law of the place where the property is locally situated is to govern, as to the capacity or incapacity of the testator, the extent of his power to dispose of his property, and the forms and solemnities, to give the will its due attestation and effect. Story's Confl. Laws, section 474, and authorities there cited; 1 Garman on Wills, 1, 2, and Perkins' notes; 4 Kent's Com. 513.''

With this view, the federal authorities are in accord. The supreme court of the United States has recognized this rule in *Overby* v. *Gordon,* 177 U. S. 214, 20 Sup. Ct. 603, 44 L. Ed. 741, *Robertson* v. *Pickrell,* 109, U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049; *Blount* v. *Walker,* 134 U. S. 607, 10 Sup. Ct. 606, 33 L. Ed. 1036; *McCormick et ux.* v. *Sullivant et al.,* 10 Wheat. 192, 6 L. Ed. 300; *Clarke* v. *Clarke,* 178 U. S. 186, 20 Sup. Ct. 873, 44 L. Ed. 1028; *Farrell* v. *O'Brien,* 199 U. S. 110, 25 Sup. Ct.

727, reported as *O'Callaghan* v. *O'Brien* in 50 L. Ed. 101. We refer also to *Higgins* v. *Eaton* (C. C.), 188 Fed. 938. These cases are based upon the well-established legal proposition that the probate of a will is primarily and essentially a proceeding *in rem* and has no direct effect upon property outside of the jurisdiction in which the will is probated. The right of the testator to devolve property by last will and testament and the rights of any alleged devisee thereunder are statutory rights. Therefore in ascertaining the rights of the widow in the present case we must look to the statutes of our own jurisdiction. Mississippi, as one of the sovereign states of the Union, has the unquestioned right to prescribe the competency of persons to make a will and to deal by statute with the whole subject of wills, as well as to enact its own law of descent and distribution. This our state has done. No foreign court has jurisdiction over lands situated in our state. The will here attacked had no operative effect upon the Mississippi property of Capt. Pizzati until it was conclusively established as his true and lawful will. But it is adroitly suggested that section 5078, Code of 1906, prescribed who may execute wills; that the will of Pizzati in this case conforms to the statute; that, being a will which conformed both with the law of Louisiana and the law of Mississippi and having been accepted in Louisiana, the jurisdiction of the testator's domicile, any question as to the mental capacity of the testator has been foreclosed.

It is adroitly suggested that the main issue on any will contest is an issue single—will or no will—and this indeed has been the ruling of our court. But there was no issue presented to the Louisiana courts as to the mental capacity or incapacity of Capt. Pizzati or as to any undue influence. As we see it, the widow, recognizing her rights to one-half of the community property in Louisiana, simply acquiesced in the probation of the will in the civil district court of Louisiana and

took what the law of Louisiana, and not what her husband's will, gave her. Even in doing this, she, according to her proof, was led to believe, and did believe; that her home in Biloxi would become her individual property and would be unaffected by the will or any proceeding in the courts of Louisiana. Under the circumstances we do not think she is estopped to contest the will in Mississippi. It is undisputed that she is the widow and sole heir at law. Under the positive mandates of our law, she, in the absence of a will, inherits the property in dispute. She is vitally interested in having the court and jury determine the legality of the will. She has the absolute legal right to provoke the contest. This she has done and stands upon her legal rights. It is sought to take away this right, first, on the ground of estoppel by conduct, secondly, by an alleged binding judgment of the Louisiana court. As we interpret the facts, there is no estoppel by conduct. Our views on this point have been sufficiently indicated. As to estoppel by judgment, the Louisiana court never had jurisdiction of the subject-matter. It is sufficient on this point to observe that the present controversy primarily involves title to real estate in Mississippi. The rights of the parties to this real estate can be adjudicated only in Mississippi courts. It is a purely local question. In determining this title no constitutional question is presented. As stated by our court in *Wells et al* v. *Wells,* 35 Miss. 638:

"To enable a party, claiming title to property under a will, to avail himself of such will, as evidence of the bequest, it must appear to have been regularly probated in the jurisdiction where the property is situated, is further illustrated by the decision of the court in the case of *Fotheree et ux.* v. *Lawrence,* 30 Miss. 416."

The case just quoted from is the only Mississippi case which could possibly suggest any difficulty in arriving at a proper conclusion in the case at bar. In the Wells Case our court gave force and effect to the judg-

ment of the Louisiana court settling the controversy between the same parties over the same property. The difference between the Wells Case and the present case is manifest. In the Wells Case the property of the deceased happened to be for the time situated within the jurisdiction of the Louisiana courts. The parties appeared before the Louisiana courts and litigated fully the questions at issue. The real decision in the Wells Case is indicated by the concluding statements of the opinion as follows:

"That litigation was terminated by the judgment of the of the courts of Louisiana and, as we think, rightly, in the end. The property was situated there, and, having jurisdiction over both the property and the persons of the parties, they cannot be heard to relitigate in our courts the matters that have been thus rightfully adjudicated."

It may be conceded that there are many questions which are foreclosed by the due probate of a will at the domicile of the testator, and that under broad principles of comity our court will give full force and effect to the judgments of the courts of other states; but in all such cases the jurisdiction of the court of first instance must affirmatively appear. Certainly they must have jurisdiction of the parties and of the subject-matter. This leads us to a discussion of another important feature of the present case. By article 1492 of the Civil Code of Louisiana, it is provided:

"Proof is not admitted of the disposition having been made through hatred, anger, suggestion or captation."

Construing this article the supreme court of Louisiana, in *Succession of Hernandez,* 138 La. 134, 70 So. 63, said:

"An action to annul a will on the ground of fraudulent suggestions or 'undue influence' or 'captation" is repelled by the plain text of article 1492 of the Civil Code."

To the same effect is the ruling of the Louisiana court in *Succession of McDermott,* 136 La. ¡80, 66 So. 546. It will be observed that as a result of this statute no issue of fraud or undue influence can be raised in a contested will case in Louisiana. Speaking alone for the writer, this appears an unusual and strange *fiat* of the law given. By the positive provision of our Mississippi statute, any foreign will attempted to be probated in our jurisdiction is subject to contest. In the presentation and decision of such contest, it is unnecessary to decide what limitations, if any, our court would place around contestant so far as the issue would affect personal property which might be within our jurisdiction; but as to realty there can be no restrictions upon the right of a contestant except that placed by the jurisdiction of this state. The right to contest a will on the ground of undue influence is a: familiar right, one recognized and elaborately discussed by text-writers in their treatment of the substantive law. This right has always been recognized by our courts, and the principle is thoroughly imbedded in the jurisprudence of our commonwealth. The quoted provision then of the Louisiana Code is contrary to our teaching that fraud vitiates any document; and, with due regard to the decisions of the supreme court of Louisiana and the statutory law of our sister state, we must respectfully decline to sanction fraud or legalize the results of fraud and undue influence. A will which is the product of fraud and undue influence is in the eye of our law no will at all. So far as the judgments of the Louisiana court took charge of and administered property situated in Louisiana, we cheerfully yield to the conclusions which they have reached.

As to undue influence, Mr. Schouler, in his treatise on Wills, gives, on page 265, vol. 1, a definition of undue influence and in section 229, p. 269, states the showing which the contestant must make on the ground

of fraud, compulsion, or undue influence. As stated by him, the conduct complained of "must be of such character as to destroy the testator's free agency."

In section 225 the same author declares: "Fraud and imposition, or undue influence, vitiate a will, whenever practiced upon a weaker mind to the extent 'of over-powering and directing it, provided the result be such that others have a right to complain."

From this it appears that the right to contest a will upon the ground of undue influence is a right recognize, defined, and measured by the substantive law on the subject. The evidence upon this issue is frequently circumstantial, and, as stated by Mr. Schouler, "a wide range of inquiry is permitted." Section 242. While the evidence before us is very conflicting, the jury has resolved the sharp issues of fact in favor of the contestant, and we have no right to say on the present record that justice has not been done.

*Affirmed.*