GILMORE *v.* GILMORE.*

(Division A.   Oct. 18, 1926.   Suggestion of Error Overruled Nov. 15, 1926.)

[110 So. 111.   No. 25731.]

1. WILLS.
     Evidence *held* to establish that testatrix possessed testamentary capacity, and that will was not induced by undue influence.

2. WILLS. *Beneficiary's acquiescence in probate proceedings in Louisiana held not to estop him from seeking annulment of proceedings in Mississippi under certified copy of Louisiana proceedings (Code 1906, section 2004 [Hemingway's Code, section 1669]).*
     Beneficiary, who acquiesced in probate of will in Louisiana, which proceeding was later annulled in favor of later will, *held* not estopped from seeking to have probate in Mississippi, under certified copy of original Louisiana proceedings, annulled, in view of Code 1906, section 2004 (Hemingway's Code, section 1669).

*Corpus Juris-Cyc References: Wills, 40Cyc, p. 1023, n. 29; p. 1165, n. 87; p. 1236, n. 69.

APPEAL from chancery court of Harrison county.
HON. V. A. GRIFFITH, Chancellor.

Suit by William V. Gilmore against Joseph C. Gilmore, wherein defendant filed a cross-bill. Decree for plaintiff, and defendant appeals. Affirmed.

*Mize & Mize* and *J. C.* and *Thomas Gilmore,* for appellant.

I. Can the will of Miss Ellen Gilmore of date June 21, 1904, be now probated in Mississippi as an original will? It can. Authority in support thereof: Section 2004, Code of 1906.

II. Does the act of William Gilmore in participating in the probate of the will of Miss Ellen Gilmore of date June 21, 1904, in Louisiana, and his acceptance of the fruits of said will so probated with Joseph Gilmore, estop said William Gilmore in Mississippi, in the absence of fraud being shown the Mississippi court, from successfully asserting that the wills of Miss Ellen Gilmore of June 11, 1923, and of July 5, 1923, were the true last will and testament of Miss Ellen Gilmore, as to the property situated in Mississippi? Authorities in support of appellant's contention that Joseph Gilmore is thus estopped: Section 1649, Code of 1906; Gardner on Wills, p. 343; *Apgar* v. *Connell,* 140 N. Y. Supp. 703; *Phillips* v. *Phillips,* 8 Watts (Pa.) 197; 16 L. R. A. (N. S.) 236; *Lloyd's Estate,* 24 Pa. (Co. Ct.) 567; *Stapilton* v. *Stapilton,* 1 Atk. 2, reported also in White & Tudor's Leading Cases in Equity (6 Ed.), 920; *Stringfellow* v. *Early,* 40 S. W. 871; *Williams* v. *Williams,* L. R., 2 ch. 294; *Westby* v. *Westby,* 2 Drury & War; 43 L. R. A. (N. S.) 575; 16 L. R. A. (N. S.) 235; *Johnson* v. *Johnson,* 26 Ann. 572; Bishop on Contracts (1887), section 57, and cases there cited; *Bunel* v. *O'Day,* 125 Fed. 317; 12 Am. & Eng. Enc. of Law (2 Ed.), p. 875.

III. Was there any fraud shown in the Mississippi court that caused William Gilmore to participate in the probate in Louisiana of the will of Miss Ellen Gilmore

of date June 21, 1904, and caused his acceptance of the fruits under said will so probated? William Gilmore showed no such fraud.

IV. Is the decision of the supreme court of Louisiana against Joseph Gilmore binding on the Mississippi court as to the property located in Mississippi? Authorities supporting appellant's contention that the Louisiana decision is not binding: *Woodville* v. *Pizzati*, 119 Miss. 442; 1 Alexander on Wills, par. 281; *Wells* v. *Wells*, 35 Miss. 638; *Crusoe* v. *Butler*, 36 Miss. 160; *Still* v. *Corporation of Woodville*, 38 Miss. 640; *Overby* v. *Gordon*, 177 U. S. 214, 44 L. Ed. 741; *Robertson* v. *Pickerel*, 109 U. S. 698, 27 L. Ed. 1049; *Blount* v. *Walker*, 134 U. S. 607, 33 L. Ed. 1036; *McCormick* v. *Sullivant et al.*, 10 Wheaton 192, 6 L. Ed. 300; *Clarke* v. *Clarke*, 178 U. S. 186, 44 L. Ed. 1028; *Farrell* v. *O'Brien*, 199 U. S. 110, reported as *O'Callaghan* v. *O'Brien*, 50 L. Ed. 101.

V. All of the equities of the case are with Joseph Gilmore. *Boisaubin* v. *Boisaubin*, 51 N. J. 252, 27 Atl. 624, 28 R. C. L. 148.

*White, Ford, Graham & Gautier* and *Spencer, Gidiere, Phelps & Dunbar,* for appellee.

In view of the finding of the chancellor and of the overwhelming evidence establishing the sanity of the testatrix, and the lack of any undue influence, we deem it unnecessary to discuss the defense of insanity and undue influence. There remains, therefore, only the defense that appellee is estopped to ask for the probate of the will of 1923, because of his participation in the Louisiana court in the proceedings probating the will of 1904. It will be observed that this question in no wise involves the validity of the will of 1923.

The proposition advanced by appellant is that despite these facts, he, a citizen of Louisiana, can defeat the

right of appellee, also a citizen of Louisiana, to probate the will of 1923 in Mississippi because appellee participated in the probate of a prior will and all proceedings had thereunder have been wiped out by the Louisiana court in a proceeding to which appellant was a party.

It seems to us that the mere statement of the proposition completely refutes it. The very basis of the estoppel must be the existence of a record in the Louisiana court of proceedings to probate the 1904 will to which appellee was a party. There is no such record left, however, as the Louisiana court itself has wiped out the proceedings, so that the situation is the same as if they had never been taken. The case falls within the rule stated in 1 Freeman on Judgments, p. 594, sec. 302.

In the second place, the judgment of the supreme court of Louisiana is *res adjudicata* of the question and established for all times, as between parties, that the circumstances under which appellee was induced to join in the probate of the will of 1904 were not such as to estop him from claiming under the will of 1923. *Dean* v. *Board of Supervisors*, 99 So. 563.

It should be unnecessary to discuss the question as to whether the evidence adduced in this case over our objection and under a reserved ruling and which was subsequently held by the chancellor to have been inadmissible would establish that appellee was estopped to probate the will of 1923 in Mississippi. We do so, however, merely out of a superabundance of caution.

In the first place, we submit that the action of the appellee in joining in the probate of the will of 1904 in Louisiana would in no event estop him from probating the will of 1923 in Mississippi. Inasmuch as the Louisiana court had no jurisdiction over the real estate situated in Mississippi (*Woodville* v. *Pizzati*, 119 Miss. 442, 81 So. 127), the utmost that could be said would be that the appellee had agreed to take the Louisiana property

under the will of 1904. It could not be inferred therefrom that there was any agreement by him to take the Mississippi real estate under that will. The court, in the case of *Woodville* v. *Pizzati, supra,* clearly recognized the correctness of the proposition now advanced by us.

We submit that under such circumstances a court of equity would not deprive a layman of the one-half of the valuable estate and give same to a lawyer, in violation of the wishes and desires of the testatrix, merely because that layman had joined in the probate of the previous will in another jurisdiction which had itself set aside the probate of the previous will on the grounds stated by the supreme court of Louisiana. 2 Pomeroy on Equity Jurisprudence, pars. 586, 647, 848, 849 and 956.

The judgment appealed from should be affirmed.

Argued orally by *J. H. Mize* and *Thomas Gilmore,* for appellant, and *E. P. Phelps* and *E. J. Ford,* for appellee.

COOK, J., delivered the opinion of the court.

This case involves a contest by brothers of the will of their sister, Miss Ellen A. Gilmore, and the history of the case, as it appears in the record, is substantially as follows:

The appellant, Joseph C. Gilmore, seventy-six years of age, the appellee, William V. Gilmore, seventy-four years of age, and their sister, Miss Ellen Gilmore, who at the time of her death was about sixty-six years old, were citizens of the state of Louisiana, and residents of the city of New Orleans. Their father died some time prior to 1904, and each of these parties inherited from him a considerable estate. None of these parties ever married, and, after the death of their mother in 1904, they continued to live together in the old family home. The appellant, Joseph C. Gilmore, a successful lawyer,

assumed the support and maintenance of the household and its inmates, which included certain nephews and a niece, children of a deceased brother. These nephews and the niece were raised in the home, and were supported and educated by the appellant, and one of them, Thomas Gilmore, a witness in this case, afterwards became a lawyer and partner of the appellant, but has continued to reside in the old home, which is now the property of the appellant, and they seemed to have all dwelled together in peace and harmony until 1923. While the appellee received a considerable patrimony, he seems to have assumed, throughout the greater part of his life, the role of a gentleman of leisure, depending almost entirely upon the bounty of his brother, the appellant, for support and maintenance.

On June 21, 1904, Miss Ellen Gilmore executed a will, by which she devised all her property equally to Joseph and William, her brothers, appellant and appellee herein, and deposited the same with the appellant, who kept it in his safety deposit box in the Hibernia Bank, and the fact that she had executed this will was well understood by all the members of the family. Afterwards the appellant executed his will, by which he devised his property to the nephews and niece who had been reared and educated by him, but this fact was not known to Miss Ellen Gilmore until about 1923, at which time her health had begun to decline rapidly. When Miss Ellen Gilmore discovered that her brother, Joseph had devised his property to her nephews and niece, she became greatly incensed, and appeared to have a violent antipathy for her nephew, Thomas Gilmore, of whom she had previously been very fond. About this time William V. Gilmore, who previously paid merely a passing attention to his sister, became very attentive to her, and was with her almost constantly. On June 11, 1923, she executed a will devising all of her property to the appellee, William V. Gilmore, and on July 5, 1923, she

executed a third will, which corrected some slight errors in the will of June 11, 1923, but also devised all her property to the appellee. The last two wills specifically revoked all previous wills.

On July 6, 1923, Miss Ellen Gilmore, accompanied by her brother William, left for Baltimore for the purpose of securing medical attention. She died in Baltimore on August 12, 1923, and her remains were brought back to New Orleans for burial. On the afternoon of the day of the funeral William Gilmore informed his nephew, Thomas Gilmore, that his sister had left two wills which were later than the will of 1904, in which she had devised all her property to him, William, and requested Thomas to probate these wills. Thomas told him that he could not do anything about probating the wills of 1923; that there was a will of 1904 of which William was aware; and that William could come in and join in the probation of that will, or stay out, as he liked; that the will of 1904 would be probated, and he would act as attorney for his uncle, Joseph, in that connection. This was the first information that Joseph or Thomas Gilmore had in regard to the wills of 1923, and numerous conferences between them and William followed, in all of which Joseph and Thomas insisted that they would probate the will of 1904. Finally, William agreed to join in probating that will.

On August 22, 1923, there was presented to the civil district court for the parish of Orleans a petition signed by Joseph C. Gilmore and William V. Gilmore, asking for the probate of the will of June 21, 1904, as the last will and testament of the deceased; no reference being made therein to the subsequent wills. The will was probated and the appellant and appellee qualified as executors thereunder, and letters testamentary were issued to them. On September 4, 1923, judgment was rendered upon the petition of appellant and appellee, recognizing them as sole heirs and universal legatees, in equal proportions, and placing them in possession.

On October 4, 1923, William V. Gilmore filed suit in the succession proceedings against Joseph C. Gilmore, asking for the annulment of the proceedings theretofore taken, and for judgment recognizing the validity of the wills of June 11, 1923, and July 5, 1923, and ordering their probate and recognizing the petitioner as the sole and universal legatee of decedent. The grounds of this petition for annulment, as stated in the opinion of the Supreme Court of Louisiana, were that "for many days prior to August 20, 1923, the defendant, Joseph C. Gilmore, an attorney at law, and brother of petitioner, continuously advised petitioner, who is not a lawyer, that the later wills executed by the said Ellen A. Gilmore were scraps of paper, invalid, and of no effect, and that the defendant continuously importuned petitioner to consent to the probate of the will of June 21, 1904, in which the defendant, Joseph C. Gilmore, and petitioner had been instituted universal legatees with equal shares, without disclosing the existence of the other two wills." Upon the hearing of this petition, judgment was rendered by the civil district court for the parish of Orleans granting the relief prayed for, and on appeal this judgment was affirmed by the supreme court of Louisiana. 157 La. 131, 102 So. 94.

The testatrix, Ellen A. Gilmore, owned valuable real estate located in Pass Christian, Miss., and in the latter part of November 1923, after the petition for annulment of the probate of the will of 1904 had been filed in the civil district court of the parish of Orleans, Thomas Gilmore, without the consent or knowledge of appellee, presented a petition to the chancery court of Harrison county, Miss., in the name of appellant and appellee, and as attorney for both of them, to which there was annexed a certified copy of the will of 1904 and the proceedings of the civil district court of the parish of Orleans probating same; the prayer of said petition being that said will be admitted to probate in Harrison county.

This petition was sworn to by Thomas Gilmore, and on the hearing thereof judgment was rendered by the chancery court of Harrison county on November 6, 1923, admitting to probate the authenticated copy of the will of 1904.

On January 19, 1925, appellee filed a bill of complaint in the chancery court of Harrison county, Miss., asking the court to set aside its decree of November 6, 1923, probating a copy of the will of 1904, and to admit to probate the wills of June 11, 1923, and July 5, 1923. The bill of complaint alleged substantially the facts hereinbefore set forth, and there were annexed thereto, as exhibits, duly certified copies of the three wills, the proceedings probating same in the Louisiana court, the judgment of the Louisiana court setting aside the probate of the will of 1904, the opinion and decree of the supreme court of Louisiana affirming said judgment, and the petition to the Louisiana court and its judgment recognizing the complainant as the sole legatee, and placing him in possession of all the property of the decedent.

Defendant filed his answer and cross-bill, and asked that the wills of 1923 be rejected, and that the authenticated copy of the will of 1904 be probated as the original bill. He alleged that the said wills of 1923 were invalid, because the testatrix was at the time of their execution insane, and because the execution of said wills was brought about by undue influence. He also set up that William V. Gilmore was estopped, by his participation in the proceedings had in Louisiana in connection with the probate and execution of the will of 1904, from asserting the validity of the wills of 1923.

William V. Gilmore filed an answer to the cross-bill, in which he pleaded that all of the matters set forth in the defendant's answer had been adjudicated, settled, and foreclosed by the decision of the supreme court of Louisiana, and in connection with said plea filed a cer-

tified copy of the record and proceedings in the supreme court of the state of Louisiana as a part of his answer.

By agreement of counsel the case was tried without a jury, and the appellee, complainant in the court below, offered the testimony of several witnesses to establish the testamentary capacity of testatrix and the lack of undue influence, and also offered the record of the proceedings of the Louisiana court annulling the judgment probating the first will, and recognizing the validity of the two later wills, and admitting them to probate. The appellant, defendant in the court below, offered the testimony of only two witnesses, Thomas Gilmore, his nephew and law partner, and Mrs. Beatrice O'Reilly, a niece of the defendant, and a sister of Thomas Gilmore. These witnesses testified in detail as to the family history and relations, and as to the facts connected with, and leading up to, the execution of and probation of the will of 1904, and the proceedings for the annulment of the probate of that will. At the conclusion of the testimony, the court held that the charges of undue influence and testamentary incapacity were not sustained by the evidence, and that the defense of estoppel because of participation by complainant in the probate of the 1904 will was unfounded, as this question was foreclosed by the decision of the civil district court for the parish of Orleans and the judgment of the supreme court affirming the same, which held that the probate of the first will was null and void, and annulled the entire proceedings probating that will.

The findings of the chancellor that the testatrix possessed sufficient testamentary capacity, and that the wills of 1923 were not induced by undue influence, are, upon the proof, manifestly correct. In fact, we do not understand that it is seriously contended that the decree should be reversed on either of these points.

The main contention of the appellant, as stated in the brief of counsel, is that the decision of the supreme

144 Miss.—28.

court of Louisiana holding that Joseph Gilmore practiced fraud on William Gilmore in the probation of the will of June 21, 1904, of Miss Ellen Gilmore, in Louisiana, and vitiating the probate of said will, and admitting to probate the wills of Miss Gilmore of June 11, 1923, and July 5, 1923, does not affect the right of Joseph Gilmore, in the Mississippi court, as to real property situated in Mississippi, to successfully assert that the act of William Gilmore in his acceptance of the fruits under the probate of the will of June 21, 1904, in which probate he had joined, estopped William Gilmore from establishing in the Mississippi court any will of said Miss Ellen Gilmore other than the will of June 21, 1904, or, in other words, that the decision of the supreme court of Louisiana against Joseph Gilmore is not binding on the Mississippi court as to property located in Mississippi, and, in order to avoid the estoppel created by his conduct in joining in the probation of the previous will, it would be necessary for him to show by proof offered in the Mississippi court that he had been led so to do by fraud practiced on him.

This contention is based upon section 2004, Code of 1906 (section 1669, Hemingway's Code), which provides that any foreign will affecting or disposing of any property within this state, which is probated in this state, may be contested as the original might have been if it had been executed in this state. This statute undoubtedly establishes the right of the appellant to contest this will when it was offered for probate in Mississippi, so far as it affects the title of real estate situated in this state, and this right must be defined and enforced by and under the laws of this state. The chancellor, however, held that the facts constituting the basis of the estoppel asserted against the appellee, William V. Gilfore, must be found in records of the civil district court of the parish of Orleans which had now been annulled and held to be of no effect. The contention that this view gives

controlling effect to the decision of the supreme court of Louisiana which annulled the probation of the 1904 will, and, therefore, destroys the rights guaranteed by the above-mentioned statute, raises an interesting question, but one which we do not deem it necessary now to decide, for the reason that our views on another phase of the case necessarily lead to an affirmance of the chancellor's decree.

We are of the opinion that the action of the appellee in joining in the probate of the will of 1904 in Louisiana did not estop him from probating the wills of 1923 in Mississippi. The Louisiana court had no jurisdiction over the real estate situated in Mississippi, and proceedings for the probate of the will in Louisiana could in no way affect the title of the Mississippi real estate. The most that can be said of the testimony in this case is that it shows that the appellee reluctantly consented to join in the probation of the 1904 will in the civil district court of Louisiana, thereby relinquishing his claim to one-half of the property to be affected by this probation proceedings and accepting one-half under the terms of the 1904 will. It is not even claimed in the testimony for the appellant that the appellee made any agreement in reference to the Mississippi property, or that this property was ever mentioned throughout the discussions and controversy between them over the probation of these wills, and the asserted estoppel rests solely upon the fact that appellee participated in the probate proceeding had in Louisiana.

The case of *Woodville* v. *Pizzati,* 119 Miss. 442, 81 So. 127, the facts of which are somewhat analogous to those in the case at bar, is very persuasive, if not controlling, upon this point. Captain Pizzati left a will devising all of his property to one Robert Woodville. He left surviving him a wife, but no children. Mrs. Pizzati joined in the proceedings to probate the will, taking under the law of Louisiana one-half of all the property situated

in Louisiana, and thereby she relinquished all claim to the other one-half of said property. An authenticated copy of this will was afterwards probated in Harrison county, Miss., where certain real estate belonging to testator was situated, and thereupon Mrs. Pizzati, by a bill in equity in the chancery court of Harrison county, instituted a contest of the will. The defense was there interposed that Mrs. Pizzati was estopped to contest the will by her action in signing the petition for the probate of the will in Louisiana and by accepting alleged benefits thereunder. A final decree was entered in favor of the contestant, Mrs. Pizzati, and on appeal, in discussing the question of estoppel, this court said:

"As we see it, the widow, recognizing her rights to one-half of the community property in Louisiana, simply acquiesced in the probation of the will in the civil district court of Louisiana, and took what the law of Louisiana, and not what her husband's will, gave her. . . . Under the circumstances, we do not think she is estopped to contest the will in Mississippi. It is undisputed that she is the widow and sole heir at law. Under the positive mandates of our law, she, in the absence of a will, inherits the property in dispute. . . . It is sought to take away this right, first, on the ground of estoppel by conduct, secondly, by an alleged binding judgment of the Louisiana court. As we interpret the facts, there is no estoppel by conduct. Our views on this point have been sufficiently indicated. As to the estoppel by judgment, the Louisiana court never had jurisdiction of the subject-matter."

The court below having correctly adjudicated that the several defenses or objections to the probate of the will of 1923 are not sustained by the law and evidence, the decree annulling the probate of the copy of the will of 1904, and admitting to probate the duly authenticated copies of the wills of 1923, must be affirmed.

*Affirmed.*