INZER, Justice:
This case involves the last will and testament of Vernon H. Woollard, late of Panola County, Mississippi, and a chancery court decree upholding the will. The will was contested by appellant, John D. Brown, and others who are first cousins of the testator and his only heirs at law, except for Hassell Brown, another first cousin who refused to join in the contest. Appel-lee, Joe M. Brown, is the executor named in the will and the sole beneficiary. He is the son of Hassell Brown, and is a second cousin of the testator, who died on or about June 6, 1965.
The will, which had been executed on April 2, 1964, was admitted to probate in common form by decree of the chancery court dated June 11, 1965, and letters testamentary were issued to appellee. On September 20, 1965, a caveat was filed by appellant asking that the issue of devisavit vel non be made up and that upon final hearing the purported will be declared null and void. At the regular February Term 1966, an agreed decree was entered setting the matter in vacation, on March 22, 1966. On that date the issue submitted for trial by the jury was “whether or not, at the time he executed the instrument dated April 2, 1964, and purporting to be his Last Will and Testament, Vernon Wool-lard was of sound and disposing mind, memory and understanding, and free of any influence of Joe Brown.”
The jury returned a verdict in favor of the proponent, and a decree was entered declaring the will to be the true last will and testament of Vernon Woollard. Appellant did not file a motion for a new trial, and recognizes that the finding of the jury relative to the mental capacity is not an issue on this appeal.
*244 The principal contention of appellant is that the trial court was in error in refusing to peremptorily instruct the jury to find against the will. The basis of this contention is that the proof shows that at the time the will was executed a fiduciary relationship existed, that appellee actively participated in having the will prepared and executed, and therefore it is presumed to be void in the absence of proof that testator obtained independent and disinterested advice.
Vernon Woollard, testator, was about seventy years of age at the time he executed the will. He had never married, and had lived near Crenshaw in Panola County many years prior to his death. The testimony does not reveal the extent of his education, but it does reveal that he was well informed and kept himself informed by reading newspapers and books. He was especially interested in the study of diseases of cattle, and had read books on this subject. In fact, he not only doctored his own cattle when he was farming, but helped his neighbors with their sick cattle.
A veteran of World War I, Woollard was a member of the Crenshaw post of the American Legion, and his closest associates were World War I veterans who were also members of the legion post. Among these friends were F. H. Womack, L. B. Mote, and Earl Ray. Womack had been for many years postmaster at Crenshaw and had served as commander of the legion post, and was at the time the will was executed the legion post finance officer. Mote was the commander of the post and Ray was a member.
On January 22, 1964, testator burned his hands while removing a burning mattress from his home. Appellee and Bill Overall, the town marshal of Crenshaw, carried testator to the veterans’ hospital in Memphis, Tennessee, where he was treated for his burns, diarrhea, malnutrition, and a cold.
In the latter part of March 1964, L. B. Mote visited testator at the hospital. On this visit testator told Mote that he needed some things and asked him to see appellee and tell him to come up there. Mote delivered the message, and a few days later appellee and Womack went to the hospital to see the testator. Appellee had received word from testator to bring Womack to the hospital when he came. While they were there, testator mentioned to Womack that he needed some things, including a hearing aid, and asked Womack if he would tend to his business for him while he was in the hospital. Womack told him that he needed someone else to tend to his business, because he was as old as the testator. Woollard then asked appellee if he would act as his agent and tend to his business. Appellee agreed that he would do so. Testator then told appellee, “Well, if you will tend to it and look after me until I’m gone, I want you to have everything I have left.”
After some discussion regarding which attorney would be obtained to prepare the necessary documents to carry out what the testator wanted done, the name of a Mr. McClure was brought up by someone, and it was agreed that Womack and appellee would go and see McClure and get his advice and have the necessary papers drawn up.
A day or two later Womack and appellee went to the office of McClure, where Wo-mack told him what the testator desired, and asked him to draw the necessary legal papers. Although appellee was present during this conference, the testimony shows that Womack was the person who actually told Mr. McClure what the testator wanted done. McClure decided that in order to carry out the desires of the testator, a power of attorney, a deed, and a will were necessary. The power of attorney was prepared and delivered to Womack. It was then late in the afternoon, and McClure told the parties that he would prepare the deed and the will and mail them in a few days. This was done.
On the following day, Womack, Mote and appellee went back to the hospital. Womack *245 located a notary public who had an office in the hospital building. Vernon Woollard executed the power of attorney and delivered it to appellee.
Two days later, on April 2, 1964, the will and deed having been forwarded by McClure, appellee and Bill Overall took the papers to the hospital and delivered them to testator. The parties went to the office of the same notary, and the deed and will were then executed. The will was witnessed by Overall and Mrs. Hicks, the secretary for the notary. Insofar as the record shows, appellee had not at this time transacted any business for the testator by virtue of the power of attorney.
Testator remained in the hospital for about five months, and then was transferred to the Sunset Rest Home at Water Valley, Mississippi, where he remained until his death on June 6, 1965.
Appellant urges that the trial court should have sustained its motion for a directed verdict, because the proof showed that at the time the will was executed a fiduciary relationship existed between the testator and appellee, who was the sole beneficiary, and because a presumption of undue influence arose which appellee failed to overcome. The rule relied upon is laid down in Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959); McElveen v. McElveen, 233 Miss. 672, 103 So.2d 439 (1958) ; Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932); and Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926); and other cases. In Croft v. Alder, in summarizing the rule, we said:
In summary, the rule applied in the case of gifts inter vivos, as by deed, that that where a confidential relation exists between donor and donee, it is presumptively void and the burden rests on the donee to produce clear and convincing evidence that the gift is free from the taint of undue influence, is not applicable in that limited sense to bequests or devises made by will. But where the beneficiary in the confidential relation has been actively concerned in some way with the preparation or execution of the will, it is a well-settled rule that the will is presumptively void as a product of undue influence by the one in the confidential relation. Annotation 1930, 66 A.L.R. 229; 1945, 154 A.L.R. 584. And, when the presumption of invalidity exists, the rule established in this state is that the beneficiary must show by clear and convincing evidence the fullest deliberation on the part of the testator and the most abundant good faith on the part of the beneficiary, taking no advantage of his influence over testator or of his superior knowledge; and that the testator’s act was the result of his own volition and upon the fullest deliberation. As defined in Ham, the presumption “can only be overcome * * * by clear evidence of good faith, of full knowledge, and of independent consent and action”; and the usual method of proving the latter is by showing that the testator “acted on the advice of a competent person, disconnected from the grantee and devoted wholly to the grantor’s interest.” (237 Miss. at 726-727, 115 So.2d at 687-688)
Appellee in this case admits that the confidential relationship existed and that he had the burden of proving the absence of undue influence, but urges that the evidence clearly made it a jury issue as to whether appellee had overcome the presumption of undue influence.
In passing on the motion for a peremptory instruction, the chancellor was required to consider the evidence favorable to the appellee as being true, together with all reasonable inferences that could be drawn therefrom. Considering the evidence in this light, we find at the outset a factual situation that distinguishes this case from the usual case involving confidential relationship. That distinguishing feature is that at the time the testator conceived the idea and made up his mind to will his property to the appellee, no con *246 fidential relationship existed between the parties.
The proof shows that prior to this time appellee had done favors of a personal nature for the testator, which the testator no doubt appreciated, but appellee had never handled any business transactions for him or advised him in any way concerning his business. The testator set in motion through his friend Womack the preparation of the power of attorney, deed and will. Womack informed the attorney as to the testator’s desire, and the will was prepared in accordance with the information furnished by him. It appears that testator’s idea of leaving his property to ap-pellee was entirely his own, and we think this to be an important fact to be considered.
This case is one in which the inception of the idea and the putting into motion the steps to carry out the intention of the testator to leave the property to ap-pellee, arose at a time when no confidential relationship existed. This fact, coupled with the other evidence in the case, was sufficient to withstand the motion for a peremptory instruction, and the chancellor was not in error in overruling the motion and submitting the case to the jury.
The case of Hall v. Clements, 214 Miss. 445, 58 So.2d 925 (1952), involved the validity of a deed executed by Mrs. Clements to her son, R. E. Clements, at a time a confidential and fiduciary relationship existed. The proof established that prior to the existence of the relationship, Mrs. Clements had attempted to deed the property to her son, but the deed she executed provided that it was to take effect at her death “and not before.” Many years later, at a time when the confidential relationship existed, the grantee was advised that the deed was invalid as a deed because it was testamentary in character. He evidently informed his mother of this fact, and she had him carry her to the office of the chancery clerk where she executed another deed to the same property.
Appellant relied there, as does the appellant here, upon the presumption of invalidity because of the confidential and fiduciary relationship, and in the absence of proof that grantor had obtained independent and disinterested advice of some person disconnected from the transaction and wholly devoted to grantor’s interest, the presumption was not overcome. However, this Court held that the line of cases supporting this contention was not controlling. One of the reasons given for so holding was that at the time the grantor conceived the idea and made up her mind to deed the property to her son no confidential and fiduciary relationship existed.
The court instructed the jury that a confidential relation existed between the testator and appellee at the time the will was executed, and that because of such relationship the burden of proof was upon the appellee to prove by clear and convincing evidence that he did not in fact exercise undue influence over the testator. The jury considered the evidence and determined that the appellee had met the burden of proof cast upon him by the law. No motion for a new trial was made, and the only questions for us to determine relative to the evidence on this appeal are whether there was sufficient evidence to submit the issue to the jury and whether there was any substantial evidence to support the verdict of the jury.
We find that there is evidence to support the verdict of the jury. In addition to the evidence heretofore related, appellee testified in his own behalf that he never at any time talked to the testator about his leaving him the property, and that he never tried to influence him in any way. The jury observed him while he was on the witness stand, and they had a right to consider his testimony along with the other testimony in the case. The jury could have concluded from the evidence in this case that the existence of the confidential relationship for two days at the time the will was executed, had no influence on the testator in this particular case.
*247 We have carefully examined and considered the assignment of error relative to the instructions, and find that when the instructions on behalf of the proponent and the contestant are read together, the jury was correctly instructed as to the law involved. We have examined and considered the other assignments of error, and find no merit in them.
After careful consideration of the record and the excellent briefs of counsel, we find that this case was well tried without reversible error. A jury heard the testimony and observed the witnesses as they testified. The issues were submitted to the jury with proper instructions, and we cannot say that the evidence does not support their verdict. Therefore this case should be affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, JONES and BRADY, JJ., concur.