# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00823-SCT

*AUBREY C. GRIFFIN, JR.*

*v.*

*PAMELA G. NICOLAS ARMANA*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/5/92 |
| TRIAL JUDGE: | HON. DENISE SWEET-OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | B. KENDALL GRIFFIN |
| | J. PEYTON RANDOLPH, II |
| ATTORNEYS FOR APPELLEE: | LISA B. MILNER |
| | GLEN K. TILL, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED IN PART - 8/8/96 |
| MOTION FOR REHEARING FILED: | 9/20/96 |
| MANDATE ISSUED: | 12/2/96 |

**EN BANC.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a decision adverse to Appellant Aubrey C. Griffin, Jr. (Griffin) in the Hinds County Chancery Court involving the ownership of a certain parcel of property in the State of Florida. Griffin initiated this litigation against the Appellee, his niece Pamela G. Nicolas Armana (Armana) to recover certain real and personal property owned by Griffin taken and held by Armana. Armana filed a counterclaim against Griffin asserting that Griffin had published false and libelous statements concerning Armana and charging Griffin with intentional infliction of emotional distress and tortious interference with business.

¶2. After a two-day trial, the chancellor found that a confidential relationship as well as a fiduciary relationship did exist between Armana and Griffin. However, the chancellor failed to cancel the deed to real property in Florida and found that a $15,862.00 payment, made by Griffin to St. Stephen's School on behalf of Armana's son, was a gift. However, the chancellor determined that certain jewelry, once located in Griffin's safe deposit box, was Griffin's and Armana was ordered to return it to Griffin. Finally, the chancellor denied any relief to Armana as to her counterclaim for damages for libelous statements; no cross-appeal was taken from this denial. Griffin, aggrieved by the chancellor's

ruling appeals and assigns the following as error:

**I. WHETHER THE LOWER COURT ERRED IN NOT CANCELING THE WARRANTY DEED FROM GRIFFIN UNTO ARMANA AND RESTORING GRIFFIN TO TITLE IN THE FLORIDA PROPERTY,**

**II. WHETHER THE LOWER COURT ERRED IN FAILING TO IMPOSE A CONSTRUCTIVE TRUST AS REGARDS CERTAIN REALTY AND PERSONALTY RIGHTFULLY BELONGING TO GRIFFIN OF WHICH ARMANA GAINED POSSESSION AND REFUSED TO RETURN TO GRIFFIN,**

**III. WHETHER THE LOWER COURT ERRED IN FAILING TO AWARD GRIFFIN A JUDGMENT FOR THE $757.69 REMAINING IN THE LOWER COURT'S REGISTRY, SAID SUM REPRESENTING RENTAL INCOME FROM THE SUBJECT REALTY AND BEING RIGHTFULLY THE PERSONALTY OF GRIFFIN,**

**IV. WHETHER THE LOWER COURT ERRED IN ADJUDGING THE $15,862.00 LOANED ARMANA BY GRIFFIN FOR ARMANA'S SON'S EDUCATION TO BE A GIFT FROM GRIFFIN UNTO ARMANA'S SON, AND**

**V. WHETHER THE LOWER COURT ERRED IN FAILING TO RENDER A FINAL JUDGMENT WHOLLY IN FAVOR OF GRIFFIN.**

## STATEMENT OF THE CASE

¶3. Griffin, a seventy-six year old disabled veteran at the time this litigation commenced, lived alone on his farm following the death of his wife in 1985. Armana, his niece, was an educated thirty-nine year old who was residing in France at the time this litigation commenced. During a visit with family in Texas, Griffin was reunited with his niece, Armana, whom he had not seen for several years. Thereafter, Armana and her children began visiting Griffin at his farm in Crystal Springs, Mississippi. In fact, her son Henri lived with Griffin between May 1988 and May 1989 while Henri attended Millsaps College in Jackson, Mississippi.

¶4. Griffin also owned real property in New Smyrna Beach, located in Volusia County, Florida. This property had previously belonged to his mother and, subsequent to her death in 1986, Griffin acquired a fee simple title in the property (a one-fourth interest by intestate succession; the remaining three-fourths interest acquired from his siblings). Griffin, in acquiring his sister May Ryan Callaway's interest in the property, promised her that he would leave the property to Armana at his death. Griffin drafted and executed a deed on December 8, 1987, conveying the Florida property to Armana; however, Griffin did not deliver the deed to Armana, but he placed it in his safe deposit box to be taken out upon his death.

¶5. Griffin opened a joint bank account with Armana at a Florida bank with $5,000.00 of his individual funds. Armana added no personal funds into this account. Griffin permitted Armana the use of his Visa charge card for emergencies. In addition, Griffin gave Armana a pearl necklace which he kept in his safe deposit box, and he occasionally allowed her to wear other pieces of jewelry which were also kept in his safe deposit box.

¶6. During the period of time between 1986, when Armana renewed her contact with Griffin, and 1989, when the litigation in the case *sub judice* was initiated, Armana enjoyed Griffin's hospitality and trust. She had full use of his Mississippi and Florida homes, access to his safe deposit box, his jewelry, his Florida checking account and his Visa card.

¶7. Sometime between December 8, 1987 (the date the deed was executed) and October 26, 1989 (the date of the deed's recordation), the warranty deed Griffin had drafted, conveying the Florida property to Armana, was secretly removed from the safe deposit box where it had remained for almost two years and recorded in Volusia County, Florida. There is conflicting testimony as to how Armana obtained the deed and whether she had Griffin's consent to record it.

¶8. Griffin argues that several pieces of jewelry and the deed disappeared from his safe deposit box between June 2, 1988 and October 31, 1989. Armana was the only other person on the box signature card with Griffin and she entered the safe deposit box alone on October 3, 1989. Griffin alleges that Armana took the deed and jewelry at this time without his knowledge or consent, and shortly thereafter, while in Florida, she had the deed recorded without Griffin's knowledge or consent on October 26, 1989.

¶9. Armana asserts that Griffin mailed the deed to her at her home in France in early 1988, and that her husband forwarded it to her mother's Texas home in the fall of 1989. Armana's mother carried the deed to her in Florida. Armana then took the deed to the courthouse for recording and it was recorded on October 26, 1989.

¶10. There is also conflicting testimony as to the ownership of several pieces of jewelry which Griffin had kept in his safe deposit box. Griffin argues that he was in possession of several pieces of jewelry which belonged to his wife prior to her death and that he kept them and other family valuables in safe deposit boxes at a local bank. Griffin noticed that several of these items of jewelry disappeared at the same time the deed was discovered missing.

¶11. Armana argues that the pieces of jewelry in question were given to her by Griffin in 1988. Armana alleges that the jewelry had belonged to her Aunt Frances, Griffin's wife, and that she had wanted Armana to have them.

¶12. Finally, there is conflicting testimony as to an expenditure by Griffin on behalf of Armana's son Henri in the amount of $15,862.00. Henri was in attendance at St. Stephen's School in Texas prior to his applying for college at Millsaps College in Jackson, Mississippi. An outstanding tuition balance was preventing his grades from being released to Millsaps for his registration. Griffin alleges that he made the payment upon extremely short notice from Armana, expecting to be repaid in due time. However, Armana and her son Henri allege that the money paid to St. Stephen's School was a gift from Griffin to Henri and his mother.

¶13. On December 28, 1989, after noting the missing jewelry and becoming aware of the recordation of the deed in Florida, Griffin filed his complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi, seeking the cancellation of the warranty deed, the imposition of a constructive trust and other relief. Griffin alleged that "in 1986 Defendant [Armana] began a deliberate course of conduct specifically designed to exert undue influence upon Plaintiff [Griffin] for her own material gain and to the detriment of Plaintiff [Griffin]." In his complaint, Griffin alleged that

Armana personally gained financially from her exertion of undue influence upon him by: (1) after making repeated requests and the subsequent execution of a warranty deed to Armana, to be held by Griffin until his death, secretly removing said warranty deed from safe deposit box and having it recorded in Volusia County, Florida; (2) secretly removing and absconding with several pieces of jewelry which had been secured in the same safe deposit box; (3) influencing Griffin to allow her the use of his Visa charge card for emergencies and repeatedly making personal charges without the knowledge or authorization of Griffin; (4) influencing Griffin to open a joint checking account in the name of both parties and borrowing/using sums of money from Griffin without his consent; and (5) influencing Griffin to pay the sum of $15, 862.00 to St. Stephen's School for a tuition debt owed by Armana for her son's schooling upon a promise to repay. Griffin alleged that all of these acts were to the detriment of Griffin and done as a result of Armana's undue influence upon her uncle.

¶14. Armana filed a special appearance to object to the court's jurisdiction and a motion to dismiss. After a hearing, the chancellor entered an order finding personal and subject matter jurisdiction proper in the matter and asserting said jurisdiction. Armana then filed her answer and counterclaim alleging that Griffin had published false and libelous statements concerning Armana, and charging Griffin with intentional infliction of emotional distress and tortious interference with business.

¶15. After a two-day trial, the chancellor found that a confidential relationship as well as a fiduciary relationship did exist between Armana and Griffin. However, the chancellor awarded Armana title to real property in Florida and found that a $15,862.00 payment, made by Griffin to St. Stephen's School on behalf of Armana's son, was a gift to Henri. In addition, the chancellor determined that jewelry, once located in Griffin's safe deposit box, was Griffin's and was to be returned to Griffin. Finally, the chancellor denied any relief to Armana as to her counterclaim for damages allegedly resulting from false and libelous statements made by Griffin. Griffin timely filed a Motion For Reconsideration Or In The Alternative A New Trial And Other Relief. This motion was denied by the chancellor on July 21, 1992. Armana did not appeal.

¶16. Following the entry of the court's final judgment, Griffin timely filed his notice of appeal with this Court.

**STANDARD OF REVIEW**

¶17. Our review of a chancellor's findings is well settled and very familiar. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. ***Bowers Window and Door Co., Inc. v. Dearman***, 549 So. 2d 1309 (Miss. 1989) (citing ***Bullard v. Morris***, 547 So. 2d 789, 791 (Miss. 1989)); ***Gibson v. Manuel***, 534 So. 2d 199, 204 (Miss. 1988); ***Johnson v. Hinds County***, 524 So. 2d 947, 956 (Miss. 1988); ***Bell v. City of Bay St. Louis***, 467 So. 2d 657, 661 (Miss. 1985); ***Culbreath v. Johnson***, 427 So. 2d 705, 707-08 (Miss. 1983).

**DISCUSSION OF THE LAW**

**I. WHETHER THE LOWER COURT ERRED IN NOT CANCELING THE WARRANTY DEED FROM GRIFFIN UNTO ARMANA AND RESTORING GRIFFIN TO TITLE IN THE FLORIDA PROPERTY.**

¶18. This appeal proceeds against the backdrop of a facially valid deed which was placed in the land records of Volusia County, Florida, in 1989. Courts should not lightly disturb the efficacy of such instruments of conveyance. On the other hand, where a deed has been procured by one in contravention of duties owed the grantor by reason of a confidential or fiduciary relationship existing in law or in fact, our courts will not hesitate to intervene. *Smith v. Estate of Harrison*, 498 So. 2d 1231, 1233 (Miss. 1986); *Murray v. Laird*, 446 So. 2d 575, 580 (Miss. 1984); *Hendricks v. James*, 421 So. 2d 1031, 1041 (Miss. 1982). In such cases, this Court recognizes a presumption, albeit a rebuttable one, that the conveyance was the product of undue influence exercised by the party owing the duty upon the will of the dependant party. *See In Re Will of Launius*, 507 So. 2d 27, 29 (Miss. 1987); *Leggett v. Graham*, 218 So. 2d 892, 895 (Miss. 1969). Where the party owing the fiduciary duty fails to overcome the presumption by clear and convincing evidence, the court will ordinarily set aside the conveyance. *Norris v. Norris*, 498 So. 2d 809, 813-14 (Miss. 1986); *Kelly v. Shoemake*, 460 So. 2d 811, 819-20 (Miss. 1984); *Murray v. Laird*, 446 So. 2d 575, 580 (Miss. 1984). Justice Hawkins, writing for the Court in *Estate of McRae*, noted the reasoning behind such decisions:

> Why is this rule necessary? It is because this is the only method available to frustrate the success of a greed in larcenous form, carried out with no one present but the dominant party and his dependent victim. It alone can nullify a closet advantage taken by the strong upon the weak and dependent, in which the malefactor only in the rarest instances would ever be detected. This is why the law declares that when there is a fiduciary or confidential relation, and there is a gift or conveyance of dubious consideration from the subservient to the dominant party, it is presumed void. This is not because it is certain the transaction was unfair; to the contrary, it is because the Court cannot be certain it was fair. As stated in *Meek v. Perry*, 36 Miss. at 246, "if the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases, it will lend its assistance to fraud." Further, this is a "policy of the law, founded on the safety and convenience of mankind . . . preventing acts of bounty." And, the Court will not permit such a transaction to stand, "though the transaction may be not only free from fraud, but the most moral in its nature." *Id*. at 247. "The rule of law in these cases is not a rule of inference, from testimony, but a rule of protection, as expedient for the general good." *Id*. at 244.

*Estate of McRae*, 522 So. 2d 731, 737 (Miss. 1988).

¶19. It is important to note that in the case *sub judice*, Griffin was a living, active litigant who testified at the two-day trial. The court was not required to guess or infer Griffin's intent or position relative to the disposition of his real or personal property. Griffin trusted his niece, and his actions were based on his trust. In the case of *Henricks v. James*, this Court reversed a chancellor's decision and held that a deed should be set aside stating:

> Whenever there is a relationship between two people in which one is in a position to exercise a dominant influence upon the other because of the later's dependency upon the former arising from either weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character. The basis of this relationship need not be legal; it may be moral, domestic or personal. Nor is the law concerned with the source of such relationship. The principles are universally affirmed by courts.

*Henricks v. James*, 421 So. 2d 1031, 1041 (Miss. 1982) (citations omitted).

¶20. In the case *sub judice*, Chancellor Owens found that a close confidential fiduciary relationship existed between Griffin and Armana during the period prior to Armana's recordation of the deed to the Florida property. The record clearly supports the chancellor's finding that Armana assisted Griffin with his financial affairs and the running of his home, that she had a key to his safe deposit box, and that she was entrusted with private and financial information. There is no question that Armana stood in a confidential relationship to Griffin, and the chancellor correctly so ruled. However, the chancellor erred with the reference "on several occasions" found in her opinion and judgment. Once confidence is reposed in one person by another, it continues until violated or the ending of the relationship. Since the presumption of undue influence was established, the burden was on Armana to rebut the presumption by clear and convincing proof. *Mullins v. Ratcliff*, 515 So. 2d 1183 (Miss. 1987); *Murray v. Laird*, 446 So. 2d 575 (Miss. 1984); *McDowell v. Pennington*, 394 So. 2d 323 (Miss. 1981).

¶21. This Court has held that the evidence of undue influence is usually circumstantial and intangible. *Phillips v. Ford*, 250 Miss. 425, 164 So. 2d 908, (1964). "Affirmative and positive proof is needed to overcome this presumption." *Murray v. Laird*, 446 So. 2d at 578. Frequently this Court has quoted from *Jamison v. Jamison*:

> [I]t follows, from the very nature of the thing, that evidence to show undue influence must be largely, in effect, circumstantial. It is an intangible thing, which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact, universally recognized, that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to that fact. He observes, too, the same precautions if he seeks by cajolery, flattery, or other methods to obtain power and control over the will of another, and direct it improperly to the accomplishment of the purpose which he desires.

*Jamison v. Jamison*, 96 Miss. 288, 51 So. 130 (1910). *See also* *Young v. Martin*, 125 So. 2d 734, 737 (Miss. 1961); *Sanders v. Sanders*, 126 Miss. 610, 89 So. 261 (1921); *Woodville v. Pizzati*, 119 Miss. 442, 81 So. 127 (1919).

¶22. In the case *sub judice*, Griffin was a law school graduate. He drafted the warranty deed conveying the Florida property to his niece himself. He trusted his niece and believed she would abide by her promise to aid him in his older years. Griffin, a one-hundred percent disabled veteran, was paralyzed in both feet and suffered an equilibrium problem. He needed assistance to run things at his farm and around the house, and Armana promised to help him. In return, Griffin executed (but did not deliver) a deed to the Florida property to Armana, placing it in a safe deposit box for safe keeping until his death; upon which, she was to record the deed and take title to the property. This promise was made in the presence of several people, including Tommy Jackson, Roseanne Barnes, Minnie Wansley and Sandra Cooper, all of whom testified at the trial.

¶23. Griffin testified several times that it was not his intent to deliver the deed to Armana immediately after drafting and executing it. He drafted the deed, when he did, to appease his sister and Armana, who were both concerned that it go to Armana upon Griffin's death. The property was to remain Griffin's until his death. Therefore he placed it in a safe deposit box for safe keeping. Armana had

access in order to facilitate disposition of the property after Griffin's death, and to prevent any potential difficulties Armana foresaw with Griffin's son Ken.

¶24. Evidence, both testimonial and documentary, supported a finding that Armana did not act in good faith in her confidential and fiduciary relationship with Griffin. Testimony of witnesses supported Griffin's assertion that Armana had promised to take care of him in older years. As noted above, they include Sheriff Jackson, Roseanne Barnes, Minnie Wansley and Sandra Cooper. Armana herself, in a letter written to Mrs. Gene Wilson, a neighbor to the property in Florida who also managed the property in Griffin's absence, admitted that "[h]e is not going to be happy, but he has use of the house and I have my investment protected by transferring the title I have held for 2 years." Armana had the locks changed and the power cut off. Why was Griffin going to be unhappy? And how was he to have use of the property when Armana had the locks changed and the power cut off?

¶25. The chancellor erred in finding that Armana had rebutted the presumption of undue influence by clear and convincing evidence. The chancellor further erred, upon examination of the facts in the case *sub judice*, in finding that there is a presumption of delivery because the deed was recorded. Therefore, this assignment of error is sound. The judgment of the chancellor is reversed and the deed is set aside.

### II. WHETHER THE LOWER COURT ERRED IN FAILING TO IMPOSE A CONSTRUCTIVE TRUST AS REGARDS CERTAIN REALTY AND PERSONALTY RIGHTFULLY BELONGING TO GRIFFIN OF WHICH ARMANA GAINED POSSESSION AND REFUSED TO RETURN TO GRIFFIN.

¶26. Griffin argues that the chancellor erred in not imposing a constructive trust regarding certain real and personal property Armana held which rightfully belonged to him. This Court has defined a constructive trust as follows:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990) (citing *Sojourner v. Sojourner*, 247 Miss. 342, 153 So. 2d 803, 807 (1963)). *See also* *Conner v. Conner*, 238 Miss. 471, 119 So. 2d 240 (1960).

¶27. Constructive trusts are created for the purpose of preventing unjust enrichment, whereby one unfairly holding a property interest may be compelled to convey that interest to whom it justly belongs. *Allgood v. Allgood*, 473 So. 2d 416 (Miss. 1985). "It is unjust enrichment under cover of the relation of confidence, which puts the court in motion." *Russell v. Douglas*, 243 Miss. 497, 506, 138 So. 2d 730 (1962) (citing *Sinclair v. Purdy*, 139 N.E. 255 (N.Y. 1923) (Cardozo, J.).

¶28. In *Russell v. Douglas*, 243 Miss. 497, 505-506, 138 So. 2d 730, 734 (1982), this Court summarized Mississippi constructive trust law.

A constructive trust is a fiction of equity. It is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. The equity must shape the relief and courts are bound by no unyielding formula. It arises regardless of intention or agreement, express or implied. The trust is raised by implication of law. Fraud need not be shown.

It is necessary only to establish such conduct and bad faith as would shock the conscience of the court. *Sojourner v. Sojourner*, 247 Miss. 342, 153 So. 2d 803 (1963). It is the relationship plus the abuse of confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused. *Summer v. Summer*, 224 Miss. 273, 80 So. 2d 35 (1955).

¶29. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is moral, social, domestic, or merely personal. The origin of the confidence reposed is immaterial. A confidential relationship within the rule need involve neither a promise for the benefit of another nor an express fiduciary relationship. 76 Am. Jur 2d *Trusts* §§ 201, 205-212 (1992).

¶30. Generally, a constructive trust will be raised where, at the time the promise is made, the grantee does not intend to perform it, or it is intentionally false, or where confidential relationships exist between the parties and there is no other consideration for the conveyance except the promise, or where the promise is the inducing cause of the conveyance, no other consideration being given, and is relied on by the grantor.

¶31. In today's opinion, this Court finds that Armana did wrongfully take title to the Florida property by taking and recording the deed without the knowledge or consent of Griffin. Accordingly, the deed is set aside and cancelled. The chancellor in the case *sub judice* found that Armana was in possession of certain personal property, to wit, pieces of jewelry, properly belonging to Griffin and ordered that it be returned. In light of the fact that Armana was living in France prior to trial, and that the trial necessitated her return to Mississippi, the imposition of a constructive trust was a reasonable request and the chancellor erred in not imposing one on Armana concerning the jewelry she had in her possession.

## ASSIGNMENT OF ERROR NO. 3

### III. WHETHER THE LOWER COURT ERRED IN FAILING TO AWARD GRIFFIN A JUDGMENT FOR THE $757.69 REMAINING IN THE LOWER COURT'S REGISTRY, SAID SUM REPRESENTING RENTAL INCOME FROM THE SUBJECT REALTY AND BEING RIGHTFULLY THE PERSONALTY OF GRIFFIN.

¶32. This issue was not addressed by the chancellor in either her findings or judgment. Therefore it is a matter to be determined by this Court. Any funds, held in the court's registry, derived from rental of the subject real property, would belong to the rightful owner of said property. As this Court finds error as to the disposition of the Florida property addressed in issue I, the monies held in the court's

registry originating from the rental of the Florida property should be released to Griffin. He was and is the rightful owner of the Florida property.

## ASSIGNMENT OF ERROR NO. 4

### IV. WHETHER THE LOWER COURT ERRED IN ADJUDGING THE $15,862.00 LOANED ARMANA BY GRIFFIN FOR ARMANA'S SON'S EDUCATION TO BE A GIFT FROM GRIFFIN UNTO ARMANA'S SON.

¶33. Griffin argues that the chancellor erred in finding the payment of $15,862.00 to St. Stephen's School a gift to Armana's son, Henri. This Court has held that it cannot overturn a decree of a chancellor unless it finds, with reasonable certainty, that the decree is manifestly wrong on a question of law or interpretation of facts pertaining to legal questions. *In re Enlargement of Boundaries of Yazoo City*, 452 So. 2d 837 (Miss. 1984).

¶34. Although there may have been sufficient evidence to support the chancellor's finding that Griffin's payment of the outstanding tuition debt was a gift to Henri, there is conflicting testimony as to whether the money was a loan or a gift to a loved family member. Simply put, it became a question of credibility. However, the chancellor applied an improper legal standard. In requiring a showing of <u>fraud</u> on behalf of Armana regarding the $15,862.00 payment to St. Stephen's School, the chancellor applied the wrong legal standard. In light of the facts in the case *sub judice* and the chancellor's finding of a confidential relationship, an unrebutted showing of <u>undue influence</u> was all that was necessary. Fraud is too high a standard and not applicable in this case. Therefore, the chancellor erred in finding the $15,862.00 payment to St. Stephen's School a gift.

¶35. The chancellor found that there was a confidential and fiduciary relationship between Griffin and Armana. Such a finding raises the presumption of undue influence. To rebut this presumption, Armana must show clear and convincing evidence that she did not exert undue influence on Griffin to obtain the funds in question.

¶36. This Court, in *Croft v. Alder*, 115 So. 2d 683 (Miss. 1959), noted the following:

> [T]he rule applied in the case of gifts *inter vivos*, as by deed, [is] that where a confidential relation exists between donor and donee, it is presumptively void and the burden rests on the donee to produce clear and convincing evidence that the gift is free from the taint of undue influence . . . .

*Id.* at 687-88.

> When [a confidential] relation exists, and the parties thereto -- 'consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, and there results from their dealing some conveyance or contract or gift, * * * the principle literally and directly applies. The transaction is not necessarily voidable, it may be valid, but a presumption of its invalidity arises . . . .' 2 Pomeroy Equity Jurisprudence (4th Ed.), § 957.

*Id.* at 687 (quoting *Ham v. Ham*, 110 So. 583, 584 (Miss. 1926)).

¶37. "With a gift inter vivos, there is an automatic presumption of undue influence <u>even without abuse of the confidential relationship</u>. Such gifts are presumptively invalid." *Madden v. Rhodes*, 626 So. 2d 608, 618 (Miss. 1993). The *Madden* Court continued:

> The appropriate standard, then, is that no abuse of the confidential relationship must be proved to raise the rebuttable presumption of undue influence accompanying an inter vivos transfer. Nor does this Court require a finding of mental incompetence on the part of the grantor to raise the presumption. When a confidential relationship exists, the presumption arises automatically, to be rebutted by clear and convincing evidence presented by the one who wishes to uphold the validity of the gift.

*Id.* at 619.

¶38. We may never know exactly what transpired between Armana and Griffin concerning the payment to St. Stephen's School. Although Griffin, Armana and Henri each testified, their testimony is in conflict and therefore not conclusive. It is this problem that this Court's rule regarding the presumption of undue influence seeks to alleviate.

¶39. As stated in *Meek v. Perry*, 36 Miss. 190, 246 (1858), "if the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases, it will lend its assistance to fraud." Further, this is a "policy of the law, founded on the safety and convenience of mankind . . . preventing acts of bounty." *Id*. at 247.

¶40. Armana argues that the payment was a gift to Henri, in consideration of his doing well in school and helping his uncle around the house and on the farm. However, Henri received expense money from his uncle, a car and gas charge card for his personal use, in addition to a roof over his head and food in his stomach while he resided with his uncle.

¶41. Armana requested Griffin's assistance with Henri's tuition problem on very short notice. Armana sent a mailgram on January 9, 1989, which reads:

> A.C. AND HENRY. TRIED TO WRAP UP MONEY SITU. BUT MUSYL APPEALED IN FACT. DON'T WORRY HANDWRITING PROVED FORGERY HEARING TEN JAN. TRYING TO GET TO U.S. END OF MONTH. CAN A.C. TAKE CARE OF ST. STEPHEN'S PAYMENT TO LIBERATE SCHOOL RECORDS BY 15 JAN. WILL CALL WHEN ETA FIRM. LOVE PAM."

¶42. Griffin testified that he spoke with Armana regarding the debt; that she stated that she expected the case against the estate of her previous husband, Henri Nicolas, Sr., to soon settle; and that she would pay him back. Griffin also testified that Henri assured him that he would be paid back, stating "[U]ncle A.C., I appreciate this so much. I will certainly see that you get paid." Griffin paid this debt under the undue influence of Armana.

¶43. In light of the chancellor's finding that a confidential relationship existed between Armana and Griffin, a presumption of undue influence was raised which Armana failed to rebut with clear and convincing evidence. The chancellor erred in finding that Griffin failed to prove fraud on Armana's part regarding the payment of this money. This was not the proper legal standard applicable to the

case *sub judice*.

¶44. Accordingly, as to Assignment of Error IV, the ruling of the chancellor is reversed and remanded for a hearing consistent with this opinion.

## ASSIGNMENT OF ERROR NO. 5

### V. WHETHER THE LOWER COURT ERRED IN FAILING TO RENDER A FINAL JUDGMENT WHOLLY IN FAVOR OF GRIFFIN.

¶45. Finding that the chancellor below erred as to assignments of error I, II, III, the Court reverses and renders on these issues. The Court reverses and remands on assignment of error IV. This Court cannot say that the lower court erred in failing to render a final judgment wholly in favor of Griffin; however, the Court affirms this assignment of error as to issues I, II and III.

## CONCLUSION

¶46. Accordingly, it is the opinion of this Court that this case be reversed and rendered as to issues I, II and III; thus setting aside and cancelling the deed from Griffin to Armana and imposing a constructive trust on Armana relative to the personal property she possesses. This Court reverses and remands as to issue IV, finding the chancellor below applied the wrong legal standard by requiring a showing of fraud instead of undue influence.

¶47. **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND SMITH, JJ.**

### BANKS, JUSTICE, DISSENTING:

¶48. Because I believe that there was no manifest error in the chancellor's findings or application of law, I respectfully dissent. I would affirm the judgment of the chancery court.

¶49. The majority states, without citation to authority, that once a confidential relationship is established it continues until "violated or the ending of the relationship." Majority opinion, ante p. 10. Accepting that as accurate, that principle does not justify today's holding. The clear import of the chancellor's opinion is that that relationship, which was once confidential, had in fact ended. That conclusion is supported by the evidence that at the times relevant to the transactions here in question Armana was no longer in the country and no longer administering any of Griffin's affairs. That she remained his niece and he may have retained affection for her is simply not sufficient for a confidential relationship. *See **Cunningham v. Lockett***, 216 Miss. 879, 63 So. 2d 401 (1953) (stating that ties of blood alone are not sufficient to furnish the basis for a confidential relationship); ***McKinney v. Weatherford***, 7 So. 2d 259 (Ala. 1942) (stating mere relationship between grantor and

nephew not enough to establish confidential relationship). *See also* 26 C.J.S., *Deeds*, p. 776 (stating that a deed will not be deemed the product of undue influence because motivated by natural affection for the grantee, whether a brother, or a sister, or a brother and sister).

¶50. The chancellor found that at the time of the execution of the deed to the land Armana was not in a position to exercise dominant influence over Griffin and that any presumption arising from the sporadic confidential relationship between Griffin and Armana was overcome by the evidence. That finding is amply supported by the record. At that time, Armana was not living with Griffin or in any way controlling his affairs. Griffin was shown to be fully capable and independent of her influence. Put simply, no undue influence was proven and there was no proof that Griffin's independent will was in any way overridden. Although he suffered from certain physical disabilities, he had for years managed his own affairs and was of sound mind and capable of doing so, even during the period that Armana lived in Crystal Springs and assisted him. Griffin was a law school graduate who drafted the deed in question himself. There is evidence that he did so in compliance, at least in part, with a promise made to Armana's mother concerning the disposition of the property at the time that he received the mother's interest in that property. Clearly, the finding that any presumption lingering from a prior or existing confidential relationship had been overcome is sustainable. *Norris v. Norris*, 498 So. 2d 809, 813 (Miss. 1986) (stating that the critical question is whether a confidential or fiduciary relationship exists between the grantor and the grantee at the time of execution of the deed); *Brown v. Brown*, 199 So. 2d 243, 245 (Miss. 1967). This Court should not simply substitute its judgment for that of the chancellor. *Bridges v. Bridges,* 330 So. 2d 260, 263 (Miss. 1976).

¶51. It is also my view that the Court errs in concluding that the trial court erroneously imposed a fraud standard upon Griffin with respect to the alleged gift to Henri. The complaint and Griffin's testimony charged fraud with reference to this transaction as well as undue influence. This was clearly noted by the chancellor's opinion. She rejected both contentions and found that the transaction was a gift. The undue influence claim was rejected based upon the fact that, at the time, as with the deed, Armana was in France and had no control over Griffin's affairs. The fact that she accurately noted that the burden was on Griffin to prove any fraud claim does not detract from her finding.

¶52. For the foregoing reasons, I would affirm the judgment of the chancery court.

**McRAE AND SMITH, JJ., JOIN THIS OPINION.**