SOUTHWICK, P.J.,
dissenting:
¶ 49. The majority finds that there was sufficient evidence to rebut the presumption of undue influence. Since that evidence was the testimony of the beneficiaries alone, I find it to fail of the requirement that the necessary evidence be from disinterested sources. Viewed from that necessary perspective, there was no evidence overcoming the presumption. I respectfully dissent.
¶ 50. The supreme court has not always focused on whether the evidence necessary to rebut a presumption of undue influence must be from disinterested parties. In recent case law it has, however. In fact, once the nature of the presumption is understood it is almost inevitable that independent evidence would be recognized as the only means to overcome it. As the supreme court has held, the presumption does not arise because of evidence of evil motives by someone close to the person who is influenced. Instead, the presumption arises simply because of the opportunity for self-dealing in a confidential relation and the difficulty of having clear evidence as to the events:
Once more we state it is not the function of a court, following a gift made by virtue of a fiduciary relation, to go beyond this fact and determine what the beneficiary, the receiver, did “wrong.”
To the contrary, it is because the true facts surrounding the gift in such a circumstance are rarely, if ever, susceptible of proof, except from the beneficiary’s lips, that the law requires other clear and convincing evidence.
Madden v. Rhodes, 626 So.2d 608, 624 (Miss.1993). In other words, since the person who is susceptible to the influence and the person who may be wielding the influence are often the only witnesses to the acts surrounding a transaction, the law creates a presumption. If that presump *989 tion can be rebutted simply by the beneficiary/presumed dominant party explaining that nothing untoward happened, there is very little strength to the presumption.
¶ 51. This certainly does not mean that the dominant party cannot testify. None of the precedents have held that the person with the fiduciary obligation cannot testify. The test that has been established for determining evidentiary sufficiency starts by “[e]xcluding the testimony of the grantee, those acting in the grantee’s behalf (such as the attorney), and any others who could have a direct or indirect interest” in preserving the challenged transaction, be it a deed or will. Pallatin v. Jones, 638 So.2d 493, 495 (Miss.1994), quoting Vega v. Estate of Mullen, 583 So.2d 1259, 1274 (Miss.1991) (Hawkins, P.J., dissenting). The grantee can testify, but the fact-finder must exclude that evidence when deciding whether independent of that testimony the presumption is rebutted.
¶ 52. Thirty years ago the court suggested that the beneficiary’s testimony could be relied upon in finding that the presumption of undue influence had been overcome. In re Woollard’s Will, 199 So.2d 243, 246 (Miss.1967). It explained that “[i]n addition to the evidence heretofore related, appellee testified in his own behalf that he never at any time talked to the testator about his leaving him the property, and that he never tried to influence him in any way.... The jury could have concluded from the evidence in this case that the existence of the confidential relationship for two days at the time the will was executed, had no influence on the testator in this particular case.” Id.
¶ 53. However, much significant case law has developed in this area since then that can only be seen as a gradual tightening of the rules regarding the presumption of undue influence. The current standard that I have already quoted appeared first in a dissent in a case in which the majority relied primarily but not exclusively upon the testimony of the beneficiary in finding that the presumption of undue influence was rebutted. Vega, 583 So.2d at 1265. Though the issue of what evidence was usable was not specifically addressed by the majority, the dissent spoke to it in detail:
In those cases where you admittedly have a confidential relations transfer from a dependent to a dominant party, it seems to me that the ultimate test should be something on the order of the following: Excluding the testimony of the grantee, those acting in the grantee’s behalf (such as the attorney), and any others who could have a direct or indirect interest in upholding the transfer (such as grantee’s family), is there any other substantial evidence, either from the circumstances, or from a totally disinterested witness from which the court can conclude that the transfer instrument represented the true, untam-pered, genuine interest of the grantor? If the answer to this question is yes, then it becomes a question of fact whether or not there was undue influence. If the answer is no, then as a matter of law the transfer is voidable.
Id. at 1274 (Hawkins, P.J., dissenting).
¶ 54. This view did not remain in the minority for long. Justice Hawkins’s dissent was later quoted by the majority of the court to justify its holding that the presumption in that later case had been overcome. Pallatin v. Jones, 638 So.2d 493, 495 (Miss.1994). The court relied on the testimony of two disinterested witnesses as to the testator’s wishes, which allowed them after “[ejxcluding the testimony of the grantee, those acting in the grantee’s behalf (such as the attorney), and any others who could have a direct or indirect interest in upholding the transfer (such as grantee’s family),” to hold that there was “other substantial evidence, either from the circumstances, or from a totally disinterested witness from which the court can conclude that the transfer instrument represented the true, untam- *990 pered, genuine interest of the grantor.” Id.
¶ 55. I have already quoted this same principle from Madden, a case handed down after Vega but before Pallatin, to the effect that the “law requires the beneficiary to prove, other than from himself, that the gift was, in truth and in fact, what the giver wished, and not the result of any undue influence or improper action by the beneficiary.” Madden, 626 So.2d at 624. The court went on to explain that “when a court of equity is faced with a large gift to a dominant party by the weaker in a confidential relation, it must hear from someone besides the beneficiary, or receive clear and convincing evidence beyond that from the lips of the beneficiary, this is, in truth and in fact, what the donor wished to do on his own.” Id. at 625.
¶ 56. In reviewing the source of the evidence here, I agree with the majority’s discussion. It is undisputed that a confidential relationship existed between Ola Arnold and the appellees, her son and daughter-in-law. Ola lived with Albert and Marie Arnold for four years. During that time, Ola was totally dependent upon them for her healthcare needs. Additionally, Albert Arnold alone handled his mother’s financial affairs after his brother asked to be removed from the joint checking account which had been opened for the purpose of covering Ola’s needs.
¶ 57. Where a deed has been procured by one who has a confidential relation with the grantor, a rebuttable presumption arises that the conveyance was the product of undue influence exercised by the party owing the duty upon the will of the depen-dant. Where the party owing the fiduciary duty fails to overcome the presumption by clear and convincing evidence, the court will ordinarily set aside the conveyance. Griffin v. Armana, 687 So.2d 1188, 1192-93 (Miss.1996).
¶ 58. In order for Albert and Marie to have overcome the presumption of undue influence, the evidence must have been clear and convincing that (a) Albert and Marie exhibited good faith in the fiduciary relationship with Ola; (b) Ola acted with knowledge and deliberation when she executed the deed, and (c) Ola exhibited independent consent and action. In Re Estate of Smith, 722 So.2d 606, 612 (Miss.1998).
A Good faith
¶ 59. The first measure of whether Albert and Marie Arnold exhibited good faith in their relations with Ola is to determine who sought the preparation of the deed. Will of Fankboner, 638 So.2d at 495. Only Albert and Marie testified that Ola initiated the conveyance. The second consideration for good faith is the place of execution of the deed and the persons in whose presence the deed was executed. Id. at 496. This factor is inapplicable, as Albert, who held the power of attorney, and not Ola executed the deed himself. The third and fourth consideration is the fee that was paid and identity of the person who paid the fee. Id. This is the one consideration for the transfer that I would find to have been properly proved. Marie Arnold had cared for her mother-in-law for forty months without compensation. The attorney who prepared the deed was paid out of an account set up for Ola’s expenses. Finally, the fifth and last consideration in determining good faith is any secrecy given the execution of the transfer. Id. The execution of the deed was secret because, according to Albert, “[Ola] told me not to discuss nothing with nobody about nothing.”

B. Full knowledge

¶ 60. There are four considerations that are used to determine Ola Arnold’s knowledge and deliberation at the time that the will was executed: a) her awareness of her total assets and their general value, b) an understanding by her of the persons who would be the natural inheritors of her bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect the *991 prior will or natural distribution, c) whether non-relative beneficiaries would be excluded or included and, d) knowledge of who controls her finances and business and by what method, and if controlled by another, how dependent is the grantor on him and how susceptible to his influence. Pallatin, 638 So.2d at 496.
¶ 61. Ola Arnold’s full knowledge and deliberation was sought to be proven mainly by the absence of strong proof that she was incompetent. Only one person, Tom Arnold, testified that Ola was no longer competent. Tom testified that he visited his mother approximately every three months and that during these visits she was able to do little more than utter monosyllabic responses to his questions. Patsy Myrick, Ola’s granddaughter, stated that she saw no change from Ola’s prior competent behavior when she attended a funeral in November of 1987. Ms. Myrick would inherit through her mother who predeceased Ola if undue influence was exercised, so to that extent she testified against her interests. Albert and Marie Arnold testified that Ola was competent and communicative.
¶ 62. None of this evidence,is relevant to a finding that Ola Arnold possessed knowledge and deliberated before she executed the deed. That she might generally have been competent is not the same as knowledge and deliberation. A perfectly competent person can be overwhelmed by someone upon whom she relies and who has established a confidential relation with her. Therefore the evidence introduced is irrelevant to the issue of knowledge. The only other somewhat relevant evidence was supplied by the beneficiaries and as such, is insufficient.

C. Independent action and consent

¶ 63. The final factor to be considered in determining whether the beneficiaries overcame the presumption of undue influence is whether Ola Arnold exhibited independent consent and action. The only indication in the record that Ola acted independently of Albert and Marie comes from Albert and Marie themselves. Both testified that Ola stated that knew that she was running out of money. According to Albert and Marie, Ola wished to compensate Marie for her services by conveying to her the interest in the Scott County property.
¶ 64. The presumption of undue influence which arises in instances such as this safeguards against deceit, overreaching, and other improper conduct by a strong person over a dependent weak person. Madden, 626 So.2d at 608. The law does not require a belief that such overreaching occurred; it does not limit itself by a finding that the beneficiary must somehow have been undeserving. Here there is ample evidence that Albert and Marie Arnold were exemplary in their help to the elderly Ola Arnold. The result in such a case in fact can be harsh, but it is a protection established by the needed stringency of review of the acts of someone who has established a confidential relation. “If the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases, it will lend its assistance to fraud.... The rule of law in these cases is not a rule of inference, from testimony, but a rule of protection, as expedient for the general good.” Griffin, 687 So.2d at 1193.
¶ 65. Because the testimony of the beneficiaries alone is insufficient to overcome the presumption of undue influence, I would reverse the chancellor.
McMILLIN, C.J. AND COLEMAN AND LEE, JJ„ JOIN THIS SEPARATE OPINION.